*345 The resolutions of the court were delivered by
Gedike, J.
As to the exceptions taken for a new trial, and, as to the exceptions in arrest of judgment, the judge stated and answered them all in succession, very fully and particularly,
As to the form of the verdict, and the alteration of it after it was reduced to writing; and its not being reduced to writing until after the jury had returned into court, after having agreed on their verdict: The ancient practice was for the jury to give in their verdict ore terms by their foreman, which was recorded by the clerk of the court. If the foreman should reduce the verdict incorrectly into writing, it is the duty of the court to see that it is amended consistently with the true intent and meaning of the jury. It is not necessary that the verdict should be written by the jury at all; at any rata, it is not material that it should be written before the jury return with thei'r verdict into court. The word “prisoners,” must be taken to mean the prisoners on trial before the jury, and cannot be taken to mean any other persons. The verdict is certain, and sufficient enough.
With respect to the exceptions toj’the indictment. In favor of life, great strictness bias at all times been required in indictments. Courts have indeed leaned too much in favor of exceptions to them, which has sometimes proved very prejudicial to public justice, and a reproach to the law. This pronenéss to favor exceptions in favor of life ought not to be indulged too far. There is no reason to induce us to go beyond the limits already established; and there is no authority which has been produced which will justify or excuse us in deciding in favor of the exceptions now insisted on. It is very clear that a person aiding and assisting another in committing a murder, is to be regarded as a principal, and that he may be in- / dieted and punished, although the principal who really gave the mortal blow, or was otherwise the immediate instrument by which the murder was effected, had not been taken. The immediate injury, from which death ensues, is considered as proceeding from all who are present and abetting the injury done; and the actual per. petrator is considered as the agent of his associates. His act is their act, as well as his own ; and all are equally criminal. Post. 851. The distinction between principals in the first and second degree has been exploded. ít is now a distinction without a difference. Vide 4 Bdrr. 2074, 1 Hal. H. ?. C. 437,615. Doug. 206. This doctrine has been settled from the 4 Hen. 7, as appears' from Plowd. 97, 100. And, therefore, although it is necessary, to state ift the indictment the manner of doing the *346 injury which occasions the death of the party murdered; yet if several be present, aiding and assisting in the perpetration of the act, ^'s not material whether it is correctly stated which of them did the act. For if A be indicted as having given the mortal stroke, 00 nnd B and C as present, aiding and assisting, and it should appear from the evidence that B gave the stroke, and A and C were aiding and assisting, this proof maintains the indictment. 1 Hal. 437. Fost. 351. 1 Salk. 334. There is no good reason why the law should not be so. Great inconvenience would result; there might be a manifest defect of justice, if it were not so. If the distinction contended for should prevail, and it should be established as a rule, that a principal, in the second degree, is to be regarded in the nature of an accessary, and that the guilt of the principal, in the first degree, must be first established, before the principal, in the second degree, can be tried and convicted, the consequence would be, that if the principal, in the first degree, should die, or should escape, the principal, in the second degree, could not be tried or punished. Besides, as the counsel for the State has well remarked, the actual perpetrator may, in some cases, be less guilty than the accomplice who incited, or procured, the murder to be done. See Plow. Fots. 349. 100. P.
It follows from this reasoning, and from the authorities which support it, that it was not necessary to make a party of Jenkins in this indictment; that it was necessary to state his agency in caus. ing the death of Minton ; that Fley is charged as a principal, and properly charged; for it is expressly alleged, that he maliciously aided and assisted Jenkins, who gave the mortal stroke; that the assault was made by him, and Jenkins, with malice aforethought; and that he, the said Fléy, did feloniously kill and murder the said Minton. The precedents seem to conform to the distinction between principals in the first and second degree, and state the murder to be committed by the principal in the first degree, and then go on to charge that the aiders then and there, of their malice aforethought, were present, helping and abetting the principal in the first degree, the murder to commit, &c. And then conclude that all the principals, then and there, in manner, &c., did kill and murder the deceased. The distinction, however, of principal in the first and second degree being merely nominal, and no ways essential, it seems to be useless to preserve it in indictments. If the stroke of one be considered in law as the stroke of all, it is best to say, as .this indictment -dpes, that the party charged as principal by the stroke so given by aether, as stated in the indictment, did kill *347 and murder. If several are present, says Hawkins, and abet a fact, and one only actually does it, it may be laid generally in the indictment as done by them all, or specially as done by one only, and abetted by the rest. 2 Haw, chap. 25, sec.'64. 1 Salk. 334, 1 East. C. L. 351. As to the exception to the words “then and there” the authorities cited in support of it, clearly show that in this case it ought to have no weight. If the indictment had gone further, and said, “then and there, to wit, on the 13th of April,” there might be some room to doubt; upon the authority of 4 Co. 42. But it has been held that an allegation of the day prima facie somewhat uncertain, may be helped by the apparent sense of the whole ; as where it is alleged, as in the present case, that the principal on such a day made the assault, and gave the stroke, and that the party died on such a subsequent day ; and that the aider was ad tunc and ibidem, abettans the said principal; because the words ad tunc and ibidem, frornthe manifest import of the whole, shall be referred to the time of the stroke, by which the felony was done. 2 Haw. ch. 23, sec. 89. The best way of alleging such abetment, it is said, is to set forth that the aider was prmsens, auxilians, &c., ad feloniam and murdrum prcedictum in forma prendida faciend. 4 Co. 42. If this be correct, the words then and there may be rejected as surplusage. Or if considered material, they may be referred to the act done which caused death. The day, and place of the stroke, or other act done inducing death', by the law of England, must be expressed, because the escheat or forfeiture of land relates to that timé ; the time of the death must be expressed, because it must appear that the death was within the year and day after the stroke. 2 Hal. P. C. 179. If the time be necessary to be stated against an abettor, or for any other party, except for the purpose of showing that the 'deceased died within a year and day, it must be the time when the mortal injury is done, and not the time of the death of the party. The case in 4 Co. 42, does not appear reasonable. At all events, it cannot be admitted to govern the present. The abetment must relate to the stroke ; the death is only a consequence. 1 East. C. L. 351. And the death has relation back to the time of the stroke, which was the cause. 2 Salk. 614. Plowd. 401. The conclusion of the whole charge against the prisoners is in proper form. The constitution does not require that each material allegation against the prisoners respectively; should conclude against the peace and dignity of the State; but only that the prosecution, or indictment, should so conclude. See the State Constitution.
Note. In criminal cases, one good count in an indictment will support a general verdict. Doug. 730. Cowp. 276. 1 Johns. 322. After conviction on an indictment, the prisoner was discharged, because a juror was improperly withdrawn, and he was again indicted and tried. On the second trial, he pleaded autrefois acquit, but it was held no bar. 1 Johns. N. Y. T. R. 66.
The discharge of Rochelle, under the habeas corpus act, cannot, upon any sound principle, be considered as an acquittal from the charge, so as to bar a subsequent prosecution for the same of-fence. The act was made to secure the citizens of the State from vexatious arrests and imprisonment, and not to protect them from prosecutions for crimes actually committed. The act in favor of liberty, was sufficient to operate the discharge of the prisoner, Rochelle, from his former imprisonment, when the state’s officer was not ready to produce the proofs of his guilt; but it would be monstrous to say that such discharge should shield him from a subse. quent prosecution, when the proofs of his guilt are ready to be produced.
The exceptions were all overruled, and the prisoners were executed.