JACKSON, *ex dem.* SMITH and another, *against*
STEWART.

</div>

Where a person has entered into the possession of land under another, and acknowledged his title, he cannot set up, in defence to an action of ejectment, an outstanding title in a third person. A lease was executed in 1769, reserving rent, with a clause of re-entry for non-payment of the rent; and the lessee died in 1775, without wife or children; and there being no evidence of a continuance of possession under him, or of payment of rent, and the lessor having taken possession in 1786, it was held, in 1809, that a re-entry for non-payment of rent by the lessor, was to be presumed.

THIS was an action of ejectment, for lands in *Kingsbury*, in *Washington* county. The cause was tried at the *Washington* circuit, in *June*, 1809, before the chief justice.

At the trial the plaintiff proved, that the defendant entered into possession under a contract to purchase, made by *Zina Hitchcock*, as attorney for the plaintiff, by virtue of a letter of substitution, from *Clifford*, of *Philadelphia*, who was believed to have been authorized to make such letter of substitution. The defendant acknowledged he held under the lessors.

It was proved, that about 22 or 23 years before, one *Flint* was in possession, and acknowledged that he entered without title, and he surrendered to *Hitchcock*, as agent to *Joseph Smith*, deceased, the father of the plaintiff, (both of whom resided in *England*,) who continued in possession until about 14 or 15 years before, when the defendant applied to *Hitchcock*, as agent of *Joseph Smith*, deceased, to purchase. *Hitchcock* consented that the defendant should take possession, and the defendant agreed, verbally, for the purchase. The de-

Where an attorney undertakes to appear for a party in a cause, the court will look no further, as to his authority.

fendant entered into possession, in which he has re-
mained ever since. No writing was signed by him. The
defendant frequently requested indulgence as to the pay-
ment of the purchase-money.

In *November*, 1808, before the commencement of this
suit, the agent applied to the defendant, to have the
contract for the sale reduced to writing, and to secure
the payments. The defendant refused to do any thing;
and alleged, as a reason, that he had agreed for an ad-
verse title to the land from *John Thurman.*

It was further proved, that the defendant admitted
that *Orton Smith*, the lessor, owned the land, and was son
and heir of *Joseph Smith*, deceased.

The defendant then produced the *counterpart of a lease*
from *Joseph Smith* to *John Griffith*, dated the 26th
*June*, 1769, for the premises, which had been deliver-
ed by *Clifford* to *Hitchcock*, as agent. He then offered
in evidence an *assignment*, on the back of the lease,
dated 28th *May*, 1807, of all the lands included in the
lease, to *Thomas Bradshaw.* The assignment was exe-
cuted by " *Orton Smith*, by *Zina Hitchcock*, his attor-
ney." The defendant then offered to show, that the
lease was regularly assigned by *Bradshaw*, and, after
passing through several hands, came, by assignment, to
the defendant.

This evidence was objected to, on the ground, that
it did not appear that *Hitchcock* had authority from
*Smith* to make the assignment, or that if he had, that
he pursued his authority. *Hitchcock* then, on being
asked, said, he thought he had authority, though not im-
mediately from *Orton Smith;* that he had authority
from *Clifford*, who assumed to be the agent of *Smith;*
and that he had sold to *Bradshaw*, under the authority
from *Clifford;* and he produced a power of substitution,
executed by *Clifford.* No original power from *Smith*
was shown. The judge then rejected the assignment,
as not proved to have been executed by *Smith.*

The defendant then offered to prove, that *Hitchcock*, as agent of *Smith*, directed the suit to be commenced; but this evidence was rejected.

The defendant then produced the *original lease*, from *Joseph Smith* to *Griffiths*. It was for 999 years, reserving one shilling *per* acre for rent, and with a clause of re-entry for non-payment of rent; and proved that 30 or 40 years before, *Griffiths* went into possession, and continued in possession until 1775, when he died without wife or children; that during the war, a person, by the name of *Tully*, entered into part of the lot, and continued there about a year, but by what authority did not appear.

The judge permitted the lease to be read, as an ancient deed, but said that as it appeared to have lain dormant so long in the hands of the lessee, a re-entry was to be presumed; and a verdict was, thereupon, taken for the plaintiff, subject to the opinion of the court.

*Weston*, for the plaintiff.

*Foot* and *Shepherd*, contra.

*Per Curiam.* This is a clear case for the plaintiff. The defendant entered into possession under the plaintiff, and acknowledged his title. He now attempts to shelter himself under a lease for ever, executed by *Joseph Smith*, the father of the plaintiff, in 1769. As an outstanding title in some third person, it was certainly not available. It was a lease, with a reservation of rent, and a clause of re-entry. The original lessee died in 1775, without wife or child, and we have no evidence of any continuation of the possession under him; and 22 years before the trial, we find the lessor taking possession again, and continuing it until the recent disclaimer by the defendant.

In such a case, a regular re-entry was to be presumed, as was done in *Jackson*, ex dem. *Goose*, v. *Demarest*, (2 *Caines*, 382.) and which offered less ground for the presumption, than the present case. The defendant equally failed to show title in himself under that lease ; for there was no evidence that the plaintiff had ever as-signed his reversionary interest. The claim, or the ex-ercise of a power, to make such an assignment by *Clif-ford* or *Hitchcock*, as attorneys for *Smith*, cannot affect *Smith*, without due proof of their authority from him, or of his recognition of their acts ; and there was not the least proof of either.

The attempt of the defendant, to question the au-thority of the attorney for the plaintiffs, in bringing the suit, was also unavailing. It is the course of the K. B. said Ch. J. *Holt*, (1 *Salk.* 86.) when an attorney takes upon himself to appear, to look no further, but to proceed, as if the attorney had sufficient authority, and to leave the party to his action against him.

The plaintiff is, therefore, entitled to judgment.

<div align="center">Judgment for the plaintiff.</div>