16 U.S. 100 (____)
3 Wheat. 100
ROBINSON
v.
CAMPBELL.
Supreme Court of United States.

*101 February 24th. Law, for the plaintiff in error.
The Attorney-General, contrà.
*103 February 24th, 1818. TODD, Justice, delivered the opinion of the court, and after stating the facts, proceeded as follows: 
The first question is, whether the circuit court were right, in rejecting the evidence offered by the defendant, to establish a title in himself, under the grant of Joseph Martin, that grant being posterior in date to the grant under which the plaintiff claimed? and this depends upon the consideration, whether a prior settlement-right, which would, in equity, give the party a title to the land, can be asserted also, as a sufficient title, in an action of ejectment.
By the compact settling the boundary line between Virginia and Tennessee, and the laws made in pursuance thereof, it is declared, that all claims and titles to lands derived from the governments of Virginia, or North Carolina, or Tennessee, which have fallen into the respective states, shall remain as secure to the owners thereof, as if derived from the government within whose line they have fallen, and shall not be in any wise prejudiced or affected, in consequence of the establishment of the said line. The titles, both of the plaintiff and defendant in this case, were derived under grants from Virginia; and the argument is, that as, in Virginia, no equitable claims or rights, antecedent to the grants, could be asserted in a court of *law, in an ejectment, but were matters cognisable in equity only, [*219 that the rule must, under the compact between the two states, apply to all suits in the courts in Tennessee, respecting the lands included in those grants.
The general rule is, that remedies in respect to real estate are to be pursued according to the law of the place where the estate is situate.[(a)] Nor *104 do the court *perceive any reason to suppose, that it was the intention of the legislatures of either state, in the acts before us, to vary the application of the rule in cases within the compact. Those acts are satisfied, by construing them to give the same validity and effect to the titles acquired in the disputed territory, as they had, or would have, in the state by which they were granted, leaving the remedies to enforce such titles to be regulated by the lex fori.
The question then is, whether, in the circuit courts of the United States, a merely equitable title can be set up as a defence in an action of ejectment? *221] It is understood, that the state courts of Tennessee have *decided, that under their statutes, declaring an elder grant, founded on a younger entry, to be void, the priority of entries is examinable at law; and that a junior patent, founded on a prior entry, shall prevail in an action of ejectment, against a senior patent, founded on a junior entry. But this doctrine has never been extended beyond the cases which have been construed to be within the express purview of the statutes of Tennessee. The present case stands upon grants of Virginia, and is not within the purview of the statutes of Tennessee; the titles have all their validity from the laws of Virginia, and are confirmed by the stipulations of the compact. Assuming, therefore, that in the case of entries under the laws of Tennessee, the priority of such entries is examinable at law, this court do not think, that the doctrine applies to merely equitable rights, derived from other sources.
There is a more general view of this subject, which deserves consideration. By the laws of the United States, the circuit courts have cognisance of all suits of a civil nature, at common law and in equity, in cases which fall within the limits prescribed by those laws. By the 34th section of the judiciary act of 1789, it is provided, that the laws of the several states, except where the constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision, in trials at common law, in the courts of the United States, in cases where they apply. The act of May 1792, confirms the modes of proceeding then used in suits at common law, in the courts of the United States, and declares, *222] that the modes of proceeding in *suits of equity, shall be "according to the principles, rules and usages which belong to courts of equity, as contradistinguished from courts of common law," except so far as may have been provided for by the act to establish the judicial courts of the United States. It is material to consider, whether it was the intention of congress, by these provisions, to confine the courts of the United States, in their mode of administering relief, to the same remedies, and those only, with all their incidents, which existed in the courts of the respective states. In other words, whether it was their intention, to give the party relief at law, where the practice of the state courts would give it, and relief in equity only when, *105 according to such practice, a plain, adequate and complete remedy could not be had at law. In some states in the Union, no court of chancery exists, to administer equitable relief. In some of those states, courts of law recognise and enforce, in suits at law, all the equitable claims and rights which a court of equity would recognise and enforce; in others, all relief is denied, and such equitable claims and rights are to be considered as mere nullities, at law. A construction, therefore, that would adopt the state practice, in all its extent, would at once extinguish, in such states, the exercise of equitable jurisdiction. The acts of congress have distinguished between remedies at common law and in equity, yet this construction would confound them. The court, therefore, think, that to effectuate the purposes of the legislature, the remedies in the courts of the United States are to be, at common law or in equity, not *according to the [*223 practice of state courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of those principles. Consistently with this construction, it may be admitted, that, where by the statutes of a state, a title, which would otherwise be deemed merely equitable, is recognised as a legal title, or a title which would be good at law, is, under circumstances of an equitable nature, declared by such statutes to be void, the rights of the parties, in such case, may be as fully considered, in a suit at law, in the courts of the United States, as they would be in any state court. In either view of this first point, the court is of opinion, that the circuit court decided right, in rejecting the evidence offered by the original defendant. It was matter proper for the cognisance of a court of equity, and not admissible in a suit at law.
The next question is, whether the circuit court decided correctly, in rejecting the deed of conveyance, from the plaintiff's lessor to Arthur L. Campbell, for the land in controversy, made during the pendency of the suit? The answer that was given at the bar, is deemed decisive; although an action of ejectment is founded in fictions, yet, to certain purposes, it is considered in the same manner as if the whole proceedings were real; for all the purposes of the suit, the lease is to be deemed a real possessory title. If it expire, during the pendency of the suit, the plaintiff cannot recover his term, at law, without procuring it to be enlarged by the court, and can proceed only for antecedent damages. In the present case, the lease is to *be deemed as a good subsisting lease, and the conveyance by the [*224 plaintiff's lessor, during the pendency of the suit, could only operate upon his reversionary interest, and, consequently, could not extinguish the prior lease. The existence of such a lease is a fiction; but it is upheld, for the purposes of justice, and there is no pretence, that it works any injustice in this case.
The last question is, whether the statute of limitations of Tennessee was a good bar to the action. It is admitted, that it would be a good bar, only upon the supposition, that the lands in controversy were always within the original limits of Tennessee; but there is no such proof in the cause. The compact of the states does not affirm it, and the present boundary was an amicable adjustment by that compact. It cannot, therefore, be affirmed, by any court of law, that the land was within the reach of the statute of limitations of Tennessee, until after the compact of 1802. The statute could not begin *106 to run, until it was ascertained, that the land was within the jurisdictional limits of the state of Tennessee. The judgment of the circuit court is affirmed, with costs.
Judgment affirmed.[(a)]
*107 
*108 
NOTES
[(a)] The foundations of this doctrine, and of all the other principles concerning the lex loci, are laid down by Huberus, in his Prælectiones, with that admirable force and precision which distinguish the works of the writers who have been formed in the school of the Roman jurisconsults, and which justify the eulogium pronounced upon that school by Leibnitz. "Fundamentum universæ hujus doctrinæ diximus esse, et tenemus, subjectionem hominum infra leges cujusque territorii, quamdiu illic agunt, quæ facit, ut actus ab initio validus aut nullus, alibi quoque valere aut non valere non nequeat. Sed hæc ratio non convenit rebus immobilibus, quando ille spectantur, non ut dependentes a libera dispositione cujusque patrisfamilias, verum quatenus certæ notæ lege cujusque Reip. ubi sita sunt, illis impressæ reperiuntur; hæ notæ manent indelibiles in ista Republ. quicquid aliarum civitatum leges aut privatorum dispositiones, secus aut contra statuant; nec enim sine magna confusione præjudicioque Reipubl. ubi sitæ sunt res soli, leges de illis latæ, dispositionibus istis mutari possent. Hinc, Frisius habens agros et demos in provincia Groningensi, non potest de illis testari, quia lege prohibitum est ibi de bonis immobilibus testari, non valente jure Frisico adficere bona, quæ partes alieni territorii integrantes constituunt. Sed an hoc non obstat ei, quod antea diximus, si factum sit testamentum jure loci validum, id effectum habere etiam in bonis alibi sitis, ubi de illis testari licet? Non obstat; quia legum diversitas in illa specie non afficit res soli, neque de illis loquitur, sed ordinat actum testandi; quo recte celebrato, lex Reipubl. non vetat illum actum valere in immobilibus, quatenus nullus character illis ipsis a lege loci impressus læditur aut imminuitur.[1] Hæc observatio locum etiam in contractibus habet: quibus in Hollandia venditæ res soli Frisici, modo in Frisia prohibito, licet, ubi gestus est, valido, recte venditæ intelliguntur; idemque in rebus non quidem immobilibus, at solo cohærentibus; uti si frumentum soli Frisici in Hollandia secundum lastas, ita dictas, sit venditum, non valet venditio, nec quidem in Hollandia secundum eam jus dicetur, etsi tale frumentum ibi non sit vendi prohibitum; quia in Frisia interdictum est; et solo cohæret ejusque pars est. Nec aliud juris erit in succesionibus ab intestato; si defunctus sit paterfamilias, cujus bona in diversi locis imperii sita sunt, quantum attinet ad immobilia, servatur jus loci, in quo situs eorum est; quoad mobilia, servatur jus, quod illic loci est, ubi testator habuit domicilium, qua de re, vide Sandium, lib. 4, decis., tit. 8, def. 7." Huberus, Prælectiones, tom. 2, lib. 1, tit. 3, De Conflictu Legum. See Erskine's Institutes of the Law of Scotland (10th ed.) 309; Pothier, de la Prescription, 207; Code Napoleon, art. 3.

[1 Sed quære? See United States v. Crosby, 7 Cranch 115.]
[(a)] In Buller's Nisi Prius 110, it is laid down, that in ejectment, "if the defendant prove a title out of the lessor, it is sufficient, although he have no title himself; but he ought to prove a subsisting title out of the lessor, for producing an ancient lease for 1000 years will not be sufficient, unless he likewise prove possession, under such lease, within twenty years." The same doctrine is stated in Runnington on Ejectments 343; *225] and the case of England v. *Slade, 4 T.R. 682, is relied on to support it. But this case only shows, that the tenant may prove that the lessor's title has expired, and therefore, that he ought not to turn him out of possession.

It is unquestionable law, that in ejectment, "the plaintiff cannot recover but upon the strength of his own title; he cannot found his claim upon the weakness of the defendant's title; for possession gives the defendant a right against every man who cannot show a good title." Haldane v. Harvey, 4 Burr. 2484; S.P. Martin v. Strachan, 5 T.R. 107, note. But this doctrine was asserted in a case where the plaintiff sought to recover, upon a title, which she had conveyed away to a third person; and nothing can be clearer, than that the plaintiff cannot recover, without showing a subsisting title in himself. If the position in Buller's Nisi Prius were confined to cases of this sort, there could not be the slightest ground to question its validity. But it is supposed to establish the doctrine, that if the plaintiff has a title, which is not an indefeasible possessory title, but is, in fact, better than that of the defendant, he is not entitled to recover, if the defendant can show a superior title in a third person, with whom the defendant does not claim any privity.
It is the purpose of this note, to show, that the authorities do not justify the doctrine to this extent; and if it be true, in any case (which may be doubted), it is liable to a great many exceptions, which destroy its general applicability. Speaking upon this subject, Lord MANSFIELD is reported to have said, "there is another distinction to be taken, whether, supposing a title superior to that of the lessor of the plaintiff exists in a third person, who might recover the possession, it lies in the mouth of the defendant to say so, in answer to an ejectment brought against himself, by a party having a better title than his own. I found this point settled, before I came into this court, that the court never suffers a mortgagor to set up the title of a third person against his mortgagee." Doe v. Pegge, 1 T.R. 758, note. The point, as to a mortgagee, has been long established. In Lindsey v. Lindsey, Bull. N.P. 110, on an ejectment by a second *226] *mortgagee against the mortgagor, the court would not suffer the latter to give in evidence the title of the first mortgagee, in bar of the second, because he was barred, by his own act, from averring that he had nothing in the land, at the time of the second mortgage. And the principle of this decision has been repeatedly recognised, both in the English and American courts. Doe v. Pegge, 1 T.R. 758 note; Doe v. Staple, 2 Id. 684; Lade v. Holford, 3 Burr. 1416; Newall v. Wright, 3 Mass. 138, 153; Jackson v. Dubois, 4 Johns. 216.
Indeed, the mortgagor, notwithstanding the mortgage, is now deemed seised, and the legal owner of the land, as to all persons except the mortgagee, and those claiming under him, and he may maintain an ejectment or real action upon such seisin. Hitchcock v. Harrington, 6 Johns. 290; Sedgwick v. Hollenback, 7 Id. 376; Collins v. Torry, Id. 278; Willington v. Gale, 7 Mass. 138; Porter v. Millet, 9 Id. 101. And upon the same principle, in an ejectment by the lessor, against his own lessee, the latter is not permitted to set up or take advantage of a defect in the lessor's title, or to show a subsisting title in a third person to defeat the lessor's right. Driver v. Lawrence, 2 W. Bl. 1259; 2 Salk. 447; Newall v. Wright, 3 Mass. 138, 153; Jackson v. Reynolds, 1 Caines 444; Jackson v. Whitford, 2 Id. 215; Jackson v. Vosburgh, 7 Johns. 186; Brant v. Livermore, 10 Id. 358. So, a person who has entered into possession under another, and acknowledged his title, cannot set up an outstanding title in a third person. Jackson v. Stewart, 6 Johns. 34; Jackson v. De Walts, 7 Id. 157; Jackson v. Hinman, 10 Id. 292; Doe v. Clarke, 14 East 488. Nor can a person, claiming the land under the tenant, set up an outstanding title against the landlord; Jackson v. Graham, 3 Caines 188; nor against a purchaser under an execution against the landlord or the tenant. Jackson v. Graham, ut supra; Jackson v. Bush, 10 Johns. 223. And a person who has entered, by permission of one tenant in common, cannot, after a partition made, set up *an adverse title, in bar of an ejectment by the tenant in common, to [*227 whose share the premises had fallen. Smith v. Burtis, 9 Johns. 174; Fisher v. Creel, 13 Id. 116. And where a person in possession of land covenants with another, to pay him for the land, the covenantee is estopped from setting up an outstanding title, to bar an ejectment by his covenantor, unless he show fraud or imposition in the agreement. Jackson v. Ayres, 14 Johns. 224. Lord ELDON has declared, that with regard to mortgagors and incumbrancers, if they do not get in a term that is outstanding, but satisfied, in some sense, either by taking an assignment, making the trustee a party to the instrument, or taking possession of the deed creating the term, that term cannot be used to protect them against any person having mesne charges or incumbrances. Maundrell v. Maundrel, 10 Ves. 246, 271. See Peake's Ev. 341, 3d ed. And in cases where land has been sold by executors or administrators, under a legal authority to sell, it has been settled, that strangers to the title, those who have no estate or privity of estate or interest, and who pretend to none, affected by the sale, shall not be entitled to set up the title of the heirs, or to call on the executor or administrator for strict proof of the regularity of all his proceedings in the sale. Knox v. Jenks, 7 Mass. 488. And a stranger to a mortgage is not permitted to set it up, to defeat a legal title in the plaintiff. Collins v. Torry, 7 Johns. 278; Jackson v. Pratt, 10 Id. 381.
These cases clearly show, that the doctrine has been very much narrowed down. It remains to consider, whether the doctrine has ever been established, that a mere superior outstanding title in a third person, with whom the defendant has no privity, can be given in evidence, in an ejectment, to defeat a possessory title in the plaintiff, which is superior to that of the defendant. It is manifest, that at the time when Lord MANSFIELD delivered his opinion, in Doe v. Pegge (1 T.R. 758, note), he did not consider any such doctrine as established, for he confines his opinion to the mere case of a mortgagee, as against his mortgagor, although he *states the question in the [*228 broadest terms; and if the decisions had then gone the whole length, he would certainly have so stated. Nor is there any subsequent case in England, in which the point has been decided. The case of Doe v. Reade, 8 East 353, turned upon the circumstance that the defendant, being lawfully in possession, might defend himself upon his title, though twenty years had run against him before he took possession, the plaintiff in ejectment not claiming under the prior adverse possession; and the case of Good-title v. Baldwin, 11 East 488, turned upon the distinction, that the premises were crown lands, which, by statute, could not be granted, and that the possession of the plaintiff and the defendant was to be presumed by the license of the crown.
Undoubtedly, the plaintiff must show that he has a good possessory title; and therefore, if the defendant show that he has conveyed the land, unless the conveyance was void by reason of a prior disseisin, the plaintiff cannot recover. Gould v. Newman, 6 Mass 239; Wolcott v. Knight, 6 Id. 418; Everenden v. Beaumont, 7 Id. 76; Williams v. Jackson, 5 Johns. 489; Phelps v. Sage, 2 Day 151. So, a tenant may show, that the title of his landlord has expired. England v. Slade, 4 T.R. 682. So, in an ejectment by a cestui que trust, the tenant may set up in his defence, the legal outstanding title in the trustee. Doe v. Staples, 2 T.R. 684. For in all these cases, the evidence shows that the plaintiff has no subsisting possessory title at law, and therefore, he ought not to be permitted to disturb the tenant's possession. The general rule is, that possession constitutes a sufficient title against every person not having a better title; and therefore, the tenant may stand upon his mere naked possession, until a better title is shown. "In æquali jure melior est conditio possidentis; he that hath possession of lands, though it be by disseisin, hath a right against all men but against him that hath right." Doct. & Stud. 9; 3 Shep. Abridg. 26. And the rule of the *229] civil law is the same. Non possesserio incumbit necessitas probandi possessiones ad se pertinere. Cod. lib. 4, cited *2 Bro. Civ. & Adm. Law, 371, note.
And possession, although it be merely a naked possession, or acquired by wrong, as by disseisin, is also a title upon which a recovery can be had. For, as Blackstone justly observes, "in the meantime, till some act be done by the rightful owner to divest the possession, and assert his title, such actual possession is primâ facie evidence of a legal title in the possessor; and it may, by length of time, and negligence of him who hath the right, by degrees, ripen into a perfect and indefeasible title." 2 Bl. Com. 196. So, Jenkins, in his Centuries of Reports 42, states that the first possession, without any other title, serves in an assize for land. In Batement v. Allen, Cro. Eliz. 437, it was held, that the plaintiff was entitled to recover, in ejectment, where it was found by special verdict, that the defendant had not the first possession, nor entered under title, but upon the plaintiff's possession. And in Allen v. Rivington, 2 Saund. 111, where, upon a special verdict, in ejectment, it appeared, that the plaintiff had a priority of possession, and no title was found for the defendant, Saunders says, the matter in law was never argued, for the priority of possession alone gives a good title to the lessor of the plaintiff, against the defendant, and all the world, excepting against the rightful owner. And in a late case, it was held, that mere prior occupancy of land, however recent, gives a good title to the occupier, whereupon, he may recover, as plaintiff, against all the world, except such as can prove an older and better title in themselves. Catteris v. Cooper, 4 Taunt. 547. See also, 8 East 353. And this doctrine has been frequently recognised in the American courts. Jackson v. Hazen, 2 Johns. 22; Jackson v. Harder, 4 Id. 202. The last case goes further, and decides, that a mere intruder upon lands should not be permitted to protect his intrusion, in a suit by the person upon whom he has intruded, by setting up an outstanding title in a stranger. And in Smith v. Lorillard, 10 Johns. 338, all the authorities were reviewed, and it was held, that it is not necessary for the plaintiff in ejectment to show, in every case, a possession of twenty years, or *a paper title; *230] that a possession for a less period will form a presumption of title, sufficient to put the tenant upon his defence, and that a prior possession, short of twenty years, under a claim or assertion of right, will prevail over a subsequent possession of less than twenty years, when no other evidence of title appears on either side. In respect to real actions, it is said by Chief Justice PARSONS, that under the general ssue, the defendant cannot give in evidence a title under which he does not claim; unless it be to rebut the demandant's evidence of seisin: but that he may plead in bar a conveyance by the demandant to a third person under whom he does not claim; for if the tenant have no right, yet if the demandant have no right, he cannot, in law, draw into question the tenant's seisin, whether acquired by right or by wrong. Wolcott v. Knight, 6 Mass. 418; Gould v. Newman, Id. 239.
It is remarkable, that in none of the foregoing cases the point is stated to have been ever decided upon the naked question, whether a better subsisting title in a third person can be given in evidence by a defendant, who has no privity with that title, to defeat a title in the plaintiff, which is yet superior to that under which the defendant holds the land. Blackstone puts a case in point: "If tenant in tail enfeoffs A. in fee-simple and dies, and B. disseises A., now, B. will have the possession, A. the right of possession, and the issue in tail the right of property. A. may recover the possession against B. and afterwards the issue in tail may evict A., and unite in himself, the possession, the right of possession, and also the right of property." 2 Bl. Com. 199. Here, B. is an intruder, and therefore, comes within reach of the case of Jackson v. Harder, 4 Johns. 202. But if B. had conveyed to C. and then A. had brought an ejectment against C., could the latter have set up the title of the issue in tail, with which he had no privity, although that were a good subsisting superior title, to defeat the recovery of A.? It becomes not the annotator to express any opinion on this point; his only object is to bring the authorities in review before the learned reader, and to suggest that it may yet be considered as subject to judicial doubt.[1]
[1 To defeat an ejectment, by proof of an outstanding title, it must be a valid and subsisting one. Hunter v. Cochran, 3 Penn. St. 105: Sherk v. McElroy, 20 Id. 25; Wray v. Miller, Id. 111; Riland v. Eckert, 23 Id. 215; McBarron v. Gilbert, 42 Id. 268. The general rule is, that the plaintiff in ejectment must recover on the strength of his own title, and when an outstanding title, better than his own, is shown, he must fail to recover. Bear Valley Coal Co. v. Durant, 95 Penn. St. 72.]