ALBERT G. SLOO, plaintiff in error v. THE PRESIDENT, DIRECTORS AND COMPANY OF THE STATE BANK OF ILLINOIS, defendants in error.

*Error to St. Clair.*

The record of a cause should present the proceedings in the order of time in which they transpired.

A writ of error will lie to the decision of a Circuit Court upon a motion to set aside a judgment, and quash an execution, issued thereon.

*Semble,* That the defendants in error, by joining to error, waive all objection to the assignment of errors, if the rigid rules of pleading be adhered to; the joinder being only considered as a demurrer to the assignment of errors, in cases where the errors are not well assigned, and contradict the record.

Whenever a decision takes place in any of the Circuit or inferior Courts of record in this State, which is final, and of which a record can be made, and which decide the right of property, or personal liberty, complete jurisdiction is conferred on the Supreme Court to hear and determine the same.

One partner cannot confess a judgment in the name of his co-partner.

A power of attorney to confess a judgment, is usually under seal; but if it be made without a seal, still one partner cannot by it bind his co-partner.

*Quere,* Whether a judgment confessed for a larger amount than is actually due, can be valid.

*Quere,* Whether one partner can, after the rendition of a judgment against both upon a power of attorney to confess a judgment, executed by one only in the name of the firm, without the knowledge of the other, ratify and make valid such judgment.

THE bill of exceptions taken on the trial of this cause in the Court below, at the August term, 1837, before the Hon. Sidney Breese, contains a full statement of the case, and omitting the declaration and the notice to the defendants in error of the motion of the plaintiff in error, to set aside the judgment rendered at the May special term, is as follows:

" Albert G. Sloo & Horatio G. McClintoc ⎫ Circuit Court of St.
   v. The President, Directors and Co. of ⎬ Clair county, August
   the State Bank of Illinois.            ⎭ term, 1837.

Be it remembered that at this present term of the Court, August, 1837, the above named Albert G. Sloo moved the Court, by his counsel, to set aside the judgment *as to him* rendered at the last May term of this Court, against him and the said McClintoc, for the sum of $125,000, or to enter an order that no execution issue on said judgment against him, the said A. G. Sloo, for the following reasons:

' 1. It appears from the record in the cause, that no process

was issued and served upon the said Sloo; neither does it appear that he was brought into Court by any other means.

2. It appears that the Judgment was rendered upon a plea of confession, filed by Alfred Cowles, Esq., as attorney for the defendants, acting under a power or warrant of attorney, executed by the said McClintoc *only*, as a partner in business with the said Sloo, and not executed, or in any way assented to, by the said Sloo.

3. The power or warrant of attorney is entirely insufficient to authorize the confession of the judgment.

4. The Court had no jurisdiction of the case.

5. The judgment ought to be set aside as to the said Sloo, for reasons disclosed in the affidavits of the defendants.

HENRY STARR,<br>J. ROBINSON,<br>JAMES SEMPLE.'

The judgment referred to, is in the following words and figures, to wit:

'Be it remembered, that on Thursday the fourth day of May, A. D. eighteen hundred and thirty-seven, came the President, Directors and Co. of the State Bank of Illinois, by their attorney J. M. Krum, and filed in open Court their warrant of attorney, of A. G. Sloo and Horatio G. McClintoc, in the words and figures following, to wit:

' To any Attorney of any Court of Record in and for the State of Illinois—

You are hereby authorized to appear before Albert G. Sloo and Horatio G. McClintoc, (trading and doing business under the firm and style of A. G. Sloo & Co., in Alton,) in any such Court, at the suit of the President, Directors and Company of the State Bank of Illinois, and to receive a declaration for us in such suit, in an action of trespass on the case on promises, and thereupon to suffer judgment to pass against us in such action, for the sum of one hundred and twenty-five thousand dollars, by confession, *nil dicit, or non sum informatus*, and to release all errors of such judgment, and this shall be your sufficient authority.

Given under our hands, at Alton, this 20th day of April, A. D. 1837. A. G. SLOO & Co.

In presence of J. M. Krum.

State of Illinois, } ss.
  Madison county, }

J. M. Krum being duly sworn, says that he is the subscribing witness to the foregoing instrument and warrant of attorney, that the same was subscribed in his presence by Horatio G. McClintoc, for the firm of A. G. Sloo & Co., and this deponent further

says that the said firm of A. G. Sloo & Co. is composed of Albert G. Sloo and Horatio G. McClintoc, and that they are trading and doing business as such firm, in Alton, Madison county, and State of Illinois. And this affiant says, that the said above warrant of attorney was signed, executed, and delivered to the said President, Directors and Company of the State Bank of Illinois, on the 20th day of April, 1837, the day of the date of said instrument, and that at the time of signing and delivering the same, the said McClintoc, for the said A. G. Sloo & Co., acknowledged that he signed the same freely and voluntarily, for the uses and purposes therein expressed.          J. M. KRUM.

Subscribed and sworn before me, this 3d day
of May, 1837. In testimony whereof I
have hereto set my hand and Notarial Seal,
this 3d day of May, 1837.
          [L.S.]                 JOHN H. SPARR,
                              Notary Public, M. C.

At which day, to wit, on the said fourth day of May, A. D. eighteen hundred and thirty-seven, came the said plaintiffs by their attorney, and pray that judgment be entered up on said warrant, and which is entered in the words following, to wit:

President, Directors and Company of the State Bank of Illinois v. Albert G. Sloo and Horatio G. McClintoc, trading and doing business under the name, style, and firm of A. G. Sloo & Co.

On warrant of atty.
*Narr—Cognovit.*
Case.
Damages
$200,000 00

This day came the plaintiffs, by their attorney, and file their declaration herein, and the said defendants, by Alfred Cowles, Esq., their attorney, duly constituted by warrant of attorney, come and file their confession and cognovit, and by their attorney aforesaid, confess judgment to the said plaintiffs for the sum of one hundred and twenty-five thousand dollars. It is therefore considered by the Court, that the said plaintiffs recover from the said defendants, the said sum of one hundred and twenty-five thousand dollars, so as aforesaid confessed, and that they have execution thereof, &c.

The said Sloo, in support of his motion, introduced the following affidavits:

'Albert G. Sloo and Horatio G. McClintoc, *advs.* The President, Directors and Co., of the State Bank of Illinois.

Judgment, May
term, 1837,
for $125,000.

I, Albert G. Sloo, one of the above defendants, being sworn, depose and say, that I was not in the State of Illinois when the warrant of attorney was executed, (the 20th April, 1837,) under

Sloo *v.* The State Bank of Illinois.

which the judgment was confessed, as I understand, nor did I know any thing of its execution till some days after, nor did I suspect that it was contemplated. The first information I had of it, was communicated to me by Mr. McClintoc, when I objected to it. I immediately went to my attorneys, Messrs. Martin and Murdock, and enquired of them if it was binding upon me, or to that effect. They told me it was not binding upon me. I further depose and say, that when I learned from Mr. McClintoc, that he had given the power of attorney, he stated to me that when it was brought to him to sign, the Cashier of the Branch of the Bank at Alton, and the attorney of the Bank, enquired of him if he had any authority to sign for me, when he told them he had not. I never assented to the execution of the power of attorney, or the confession of the judgment under it.

I further depose and say, that when the judgment was rendered, there was not then due and owing to the Bank, by the firm of A. G. Sloo & Co., more than from forty to fifty thousand dollars, the precise sum I cannot now state; that the judgment extended to and covered the future liability of A. G. Sloo & Co., and was for certain drafts or orders made by them on a mercantile house in New Orleans, and by that house accepted, but which were thereafter to become due, and which A. G. Sloo & Co. would not be liable to pay to the Bank, except upon the default of the acceptor, that these drafts formed at least seventy-five thousand dollars of the amount of the judgment.

A. G. SLOO.

Sworn to and subscribed in open Court,
23d August, 1837. JOHN HAY, Clerk.

I, Horatio G. McClintoc, being sworn, depose and say, that when I executed the power of attorney under which the judgment was confessed, the said Sloo was not present; that he was not at the time in the State of Illinois, nor did he return for several days after; that I first informed him that I had executed it, when he expressed a great surprise that I had done it, and observed that I had no right to do it, or something to that effect. I further say, that before I executed the power of attorney, I was enquired of both by the Cashier and the attorney for the Bank, (Mr. Krum,) whether I had any authority to extend it for Mr. Sloo; I replied I had not. Mr. Sloo being absent in New Orleans, the Cashier of the Bank (for its safety no doubt) seemed desirous of securing to the Bank Mr. Sloo's property against other creditors, and with a view to accomplish this purpose, and under an impression that an arrangement would be made between the Bank and Mr. Sloo, on his return, I executed the power of attorney; I did not believe the Bank would use it, nor should I have signed it, if I had been under the impression that the Bank

would have used it, as has been done. This impression was derived from my conversations with the Cashier. I acted in full persuasion that an arrangement would be made with the Bank when Mr. Sloo returned, and such I believe was the impression of the Cashier, and I felt that the object was rather to secure the property of Mr. Sloo from his other creditors, in the meantime, than any thing else. I further depose and say, that when the power of attorney was given, and the judgment confessed, not more than from forty to fifty thousand dollars was *then* due to the Bank by the firm of A. G. Sloo & Co., and that more than one half of the judgment was for money thereafter to become due, and extended to future liabilities, or to paper, on which the said A. G. Sloo & Co. were liable, but not then due.

H. G. McCLINTOC.'

Sworn to and subscribed in open Court,
23d August, 1837.          JOHN HAY, Clerk.'

And now on Thursday, the fourth day of St. Clair Circuit Court, in the year aforesaid, the said motion came on to be heard; the said Bank appeared by their counsel, and filed the following affidavits, to wit:

'J. M. Krum, being duly sworn, says, that on or about the 20th day of April, A. D. 1837, Horatio G. McClintoc and Albert G. Sloo were partners in trade under the name and firm of A. G. Sloo & Co., at Alton, county and State aforesaid; that said A. G. Sloo & Co. were at that time indebted to the President, Directors and Company of the State Bank of Illinois, as this affiant was then informed by said Horatio G. McClintoc, in the sum of one hundred and twenty-five thousand dollars; which amount of indebtedness was admitted by said McClintoc, in my presence, and in the presence of James H. Lea, Esq. agent of said Bank. On the said 20th day of April aforesaid, it was proposed, in my presence, by said James H. Lea, and in the presence of said McClintoc, that said A. G. Sloo & Co. should confess a judgment in favour of said Bank for the said sum of one hundred and twenty-five thousand dollars, which proposition was agreed to by said McClintoc; and this affiant was requested by said Lea and said McClintoc to draw and prepare a warrant of attorney, for the purpose of confessing said judgment; which was done, and the said McClintoc signed the name of the said firm of A. G. Sloo & Co. to the same. And this affiant says that at the time of signing said warrant of attorney, this affiant explained the contents, force, and effect of signing the same, and said McClintoc, after such explanation, signed the same with a full knowledge of the contents, force, and effect of the same, as he admitted to me at the time of signing the same; which said warrant of attorney was the only one ever signed by said

Sloo *v.* The State Bank of Illinois.

McClintoc in favor of said Bank, to the knowledge or information of this affiant. And this affiant further says, that soon after the said warrant of attorney was signed and delivered as aforesaid, on or about the third day of May last past, said Albert G. Sloo, one of said firm of A. G. Sloo & Co., at Alton, enquired of this affiant whether I had the said warrant of attorney in my possession, to which I replied, it was in the possession of James H. Lea, Esq. aforesaid. The said Sloo then enquired the date of the said warrant of attorney, and its contents, force, and effect, which enquiry this affiant answered by explaining to said Sloo, as I had previously explained to McClintoc, the contents, force, and effect of the same, after which said Sloo replied " *It is all right, I suppose.*" During the same conversation with said Sloo, relative to said warrant of attorney, he remarked that he had never authorized his partner, McClintoc, to confess such a judgment, but said he supposed it would make no difference, as he intended to effect some amicable adjustment with the Bank relative to his indebtedness—or words to that effect; the whole conversation I cannot now recall to mind verbatim; the above is in substance what passed between us. And this affiant further says that the above conversation was had before the said judgment on the warrant of attorney was perfected—but was during the same week that judgment was entered up. During said conversation above mentioned, the said A. G. Sloo did not dissent to the signing of said warrant of attorney, in any other way or by any other words than the foregoing. From the foregoing conversation, the impression was left on my mind at the time, that he (Sloo) ratified the act of McClintoc in signing said warrant of attorney. About two days after said first conversation, (and after said judgment by confession had been entered up,) said Sloo met this affiant at his office in Alton, and in conversation said he had never authorized said McClintoc to sign a confession of judgment for him, and that he should not assent to it. This affiant further says that said Sloo first received information of the signing of said warrant of attorney from some person other than this affiant, for the reason that he (Sloo) introduced the subject in conversation, at the time first above named; and that he never, to my knowledge, gave notice to the said Bank, that he did not ratify the act of McClintoc, until after judgment had been entered up on said warrant of attorney. The foregoing contains in substance the whole of the conversations referred to above, to the best of my knowledge and belief.

J. M. KRUM.

James H. Lea, being duly sworn, deposeth and saith, that he is the Cashier of the Alton Branch of the State Bank of Illinois, and has been for the last ten months. That he is well acquainted

2K

with Albert G. Sloo and Horatio G. McClintoc, lately doing business in the town of Alton, county and State aforesaid—and that said Sloo and McClintoc were partners in trade, doing business under the name, style, and firm of A. G. Sloo & Co., on the twentieth day of April last past, and for some days afterwards. That this deponent as Cashier as aforesaid, previous to the twentieth day of April last past, called upon the said McClintoc as one of the firm of A. G. Sloo & Co., to give to this deponent, as Cashier as aforesaid, a warrant of attorney to the State Bank of Illinois, for the amount of A. G. Sloo & Co.'s indebtedness to the Bank. That on the twentieth day of April last, as aforesaid, the said McClintoc as one of the firm, and in the name of the firm, gave to Davis and Krum, the then attornies for the Bank, a warrant of attorney, for the sum of one hundred and twenty-five thousand dollars, which amount was agreed upon, between the said Lea and the said McClintoc, acting for the firm of A. G. Sloo & Co., would be sufficient to cover the entire indebtedness of A. G. Sloo & Co. to the State Bank of Illinois. And this deponent further saith, that he, this deponent, also agreed with said A. G. Sloo & Co., that he, as the Cashier of the Alton Branch as aforesaid, would endorse upon the execution, or cause the attornies for the Bank to have endorsed upon the execution issued upon the judgment which should be entered up by virtue of the warrant of attorney, so executed as aforesaid, by the said McClintoc, as one of the firm, and in the name of the firm of A. G. Sloo and Co., any amount which should prove not to be due to the State Bank of Illinois, after the bills of exchange, either drawn or endorsed, by A. G. Sloo & Co., as aforesaid, should be returned to the Bank. And this deponent further saith, upon a careful calculation which this deponent caused to be made, and which he believes to be correct, there is due and owing from the said A. G. Sloo & Co., to the President, Directors, and Company of the State Bank of Illinois, for bills of exchange, either drawn or endorsed by the said A. G. Sloo & Co., the just and full sum of one hundred and ten thousand seven hundred and thirty-seven dollars and thirty-nine cents; and that the difference between the said above mentioned sum, and the sum of one hundred and twenty-five thousand dollars, he, this deponent, has directed George T. M. Davis, as the attorney of the Bank, to have entered on the execution now in the hands of the sheriff of the county of Madison and State of Illinois—which said execution was issued upon the judgment entered up as hereinbefore particularly set forth, by the State Bank of Illinois, and against Albert G. Sloo and Horatio G. McClintoc as aforesaid, trading and doing business under the name, style, and firm of A. G. Sloo & Co. And this deponent further saith that the entire indebtedness of the said Sloo and McClintoc was created in the name of A. G. Sloo

& Co., and at the Alton Branch of the State Bank of Illinois; and that the amount above set forth as due and owing to the Bank, is so due and owing from said Sloo and McClintoc as partners in trade, &c., and that no part thereof is the individual indebtedness of either Albert G. Sloo or Horatio G. McClintoc, but that the whole amount aforesaid, is due and owing to the Bank aforesaid, as the indebtedness of A. G. Sloo & Co., and this deponent further saith that the warrant of attorney above referred to, is the only one that has been executed either by the said A. G. Sloo & Co. or by Albert G. Sloo or Horatio G. McClintoc to the State Bank of Illinois, and this deponent further saith that at the time the aforesaid A. G. Sloo & Co., by Horatio G. McClintoc, as one of the firm and in the name of the firm of A. G. Sloo & Co., made and executed the aforesaid warrant of attorney, A. G. Sloo was absent from the town of Alton, county and State aforesaid, and that the said firm of A. G. Sloo & Co. had failed—but that within a day or two after the execution of the aforesaid warrant of attorney, the said A. G. Sloo returned to Alton—that between the time of the said A. G. Sloo's return, and the day upon which the judgment was entered up, some eight or ten days intervened, and that during said term of eight or ten days, this deponent and the said Sloo had conversations relative to A. G. Sloo & Co.'s indebtedness to the Bank as aforesaid, in several of which said conversations, the power of attorney to confess judgment and upon which the judgment was confessed by A. G. Sloo and Co. to the State Bank of Illinois, was mentioned and referred to by the said Sloo, that in each and al of those conversations so had, and in which the aforesaid warrant of attorney was spoken of by the said Sloo to this deponent—the said Sloo never did either directly or indirectly intimate to this deponent that he, the said Sloo, did not consider the warrant of attorney to confess judgment as aforesaid binding upon him the said Sloo, but on the contrary from the tenor and effect of each and all of such conversations so had as aforesaid, the said Sloo always left the firm impression upon the mind of this deponent, that such confession so made and executed as aforesaid, was all right, and that he, the said Sloo, acquiesced in the said McClintoc's giving the confession as aforesaid—that such impressions, so made upon the mind of this deponent as aforesaid, were always made from the conversation had by the said Sloo and this deponent.

And this deponent further saith, that on or about the second day of May last past, and previous to the entering up of the judgment as aforesaid, this deponent called upon said Sloo and proposed to him to offer to the Bank a mortgage on his the said Sloo's real estate, and to hold the personal security the Bank then had in addition to said mortgage—that said Sloo replied thereto, he the

said Sloo would think of it, and inform this deponent the next day—that this deponent saw said Sloo the next day, and asked said Sloo if he had thought of it, that said Sloo replied to this deponent he had, but that it was too hard, and further replied to this deponent as follows—" The bank does not intend to come to fair terms with me, they have me in their power, and next will be down upon me with our confession of judgment, and ruin me." And this deponent further saith he distinctly recollects the last above referred to conversation, as it was the last conversation had with said Sloo upon the subject, and that immediately thereafter he instructed John M. Krum, then of the firm of Davis and Krum, to cause the judgment to be entered up in the St. Clair Circuit Court, which was accordingly done. And this deponent further saith that to the knowledge or belief of this deponent, the said Sloo never has given any of the officers of the State Bank of Illinois, or of the Alton Branch of the State Bank, any notice whatever that he did not consider himself, the said Sloo, as bound by the act of H. G. McClintoc in giving the aforesaid warrant of attorney, until within the last five days—and from the usual and common mode of said Bank's transacting its business— if any such notice had been given to any other of the officers of the Bank than this deponent, said notice or a copy thereof would have been given to this deponent. And this deponent further saith, that no such notice as aforesaid was ever given to this deponent either in writing or orally. And this deponent further saith that he has no interest either directly or indirectly in the event of this suit, and further this deponent saith not.

J. H. Lea.

Benjamin F. Edwards being duly sworn, deposeth and saith, that he is a director in the Alton Branch of the State Bank of Illinois, and that he is acquainted with Albert G. Sloo and Horatio G. McClintoc lately trading and doing business under the name, style, and firm of A. G. Sloo & Co. ; that a day or two after A. G. Sloo's return to Alton, this deponent was present at a conversation had between said Sloo, this deponent, and two or three others, that the whole of said conversation so had as aforesaid, was relative to A. G. Sloo & Co.'s indebtedness to the State Bank of Illinois, and for which said indebtedness the judgment at the St. Clair Circuit Court was obtained by the Bank against the said Sloo and McClintoc—that in the course of said conversation, the said Sloo remarked to this deponent and to the others in the room " I am in the power of the Bank and next you will" (meaning the Bank can) " come down upon me," or words to that effect—that from the tenor of the whole of said conversation, this deponent expressly understood the said Sloo to allude to the power of attorney executed by H. G. McClintoc in the

name of and as one of the firm of A. G. Sloo & Co., and then held by the Bank, and upon which the judgment in the St. Clair Circuit Court was confessed by said Sloo and McClintoc. And that from the whole tenor of said conversation, this deponent expressly understood the said Sloo as assenting to the act of the said McClintoc in giving the aforementioned warrant of attorney. That the said Sloo did not at that time or at any other time previous to entering up the judgment aforesaid, dissent either directly or indirectly in my presence from the act of said McClintoc in giving the aforementioned warrant of attorney, and that said conversation took place some days previous to entering up the judgment aforesaid against said Sloo and McClintoc.

B. F. Edwards.

Henry K. Lathy being duly sworn, deposeth and saith, that he is a director in the Alton Branch of the State Bank of Illinois, and that he is acquainted with Albert G. Sloo and Horatio G. McClintoc lately trading and doing business under the name, style, and firm of A. G. Sloo & Co.; that the next day after A. G. Sloo's return to Alton, this deponent was present at a conversation had between said Sloo, this deponent, and three or four others, that the whole of said conversation so had as aforesaid, was relative to A. G. Sloo and Co.'s indebtedness to the State Bank of Illinois, and for which said indebtedness, the judgment of the St. Clair Circuit Court was obtained by the Bank against the said Sloo and McClintoc—that in the course of said conversation the said Sloo remarked to this deponent and to the others in the room, " I am in the power of the Bank, and next week, you" (meaning the Bank) " can come down upon me"—that from the tenor of the whole of said conversation, this deponent expressly understood the said Sloo to allude to the power of attorney executed by H. G. McClintoc in the name and as one of the firm of A. G. Sloo & Co., and then held by the Bank, and that from the whole tenor of said conversation, this deponent expressly understood the said Sloo as assenting to the act of the said McClintoc in giving the aforementioned warrant of attorney. That the said Sloo did not at that time or any other time previous to entering up the judgement aforesaid, dissent either directly or indirectly from the act of said McClintoc in giving the aforementioned warrant of attorney, and that said conversation took place some days previous to entering the judgment aforesaid against the said Sloo and McClintoc—and this deponent further saith he has no interest either directly or indirectly in the event of this suit.

H. K. Lathy.

And after arguments of counsel and due consideration, the Court overruled said motion, to which opinion and decision of
2K*

the Court, the said Sloo, by his counsel, excepts, and prays the Court to sign and seal this his bill of exceptions.

                                        SIDNEY BREESE.  [L. S.]"

The record also states, " And thereupon on Wednesday the 23d of August, 1837, the following entry is entered on the records of this Court, to wit:

The President, Directors, and Company ⎫
of the State Bank of Illinois *v.* A. G. ⎬
Sloo and Horatio G. McClintoc.             ⎭

And now at this day came the plaintiffs by Geo. T. M. Davis their attorney and freely here in Court remit to the said defendants the sum of fourteen thousand two hundred and twenty-two dollars and sixty-one cents, part of the damages above by the said defendants confessed to be due."

J. SEMPLE, D. J. BAKER, and H. EDDY argued the cause for the plaintiff in error.  A written argument on the part of the plaintiff in error, by J. ROBINSON, was also read.

A. COWLES, S. T. LOGAN, T. FORD, and H. GAMBLE, for the defendants in error.

SMITH, Justice, delivered the opinion of the Court:(1)

This is a writ of error, prosecuted on the part of Sloo, to reverse the judgment entered in this cause against him, on the following statement of facts appearing on the record :

A judgment, by confession, was entered in the St. Clair Circuit Court, in favor of the defendants in error, against Sloo and McClintoc, trading under the firm of Sloo & Co., for $125,000.

This confession is made by Alfred Cowles, an Attorney of that Court, under a warrant of attorney, executed by McClintoc alone, in the name of the firm, without seal, authorizing any attorney of any Court in this State to appear for the partners and confess the judgment.   It further appears that the residence and place of business of the plaintiffs in error, was at Alton, in the county of Madison, where the warrant of attorney was executed.   No bond or evidence of previous indebtedness was filed or exhibited to the Court with the power of attorney on which the judgment was confessed, but the bare authority only to confess the judgment for the sum specified, appears to have been filed when the confession was entered.

At the term immediately subsequent to the rendition of this judgment, Sloo appeared, and upon affidavits filed, moved the Circuit Court to set aside the judgment, or restrain the levying of the execution upon his property, because he never executed the power, nor authorized McClintoc to execute it for him.

The Circuit Court denied the motion, to which the plaintiff in error excepted and filed his bill of exceptions.

(1) LOCKWOOD, Justice, dissented from the opinion of the Court.

The plaintiff in error, Sloo, assigns for error the refusal of the Circuit Court to grant his application, and to set aside the said judgment as to him, or to restrain the execution of the judgment as to him, and also makes a general assignment of errors, to which the defendants have joined.

A preliminary question has been raised by the counsel for the Bank, which it is necessary to dispose of, as, on that disposition, the further action of this Court will depend.

It is contended that the assignment of errors in this case, is an assignment of errors in fact, not cognizable in this Court.

The transcript returned upon the writ of error, commences with the application, notice of motion, and reasons for moving to set aside the judgment as to the applicant, and then recites that judgment, together with the warrant of attorney, the proof its execution and the declaration and confession; after which follow the affidavits of the several parties, and the refusal of the Court to grant the motion; all this is contained in the bill of exceptions, signed by the circuit judge; after which is a *remittitur*, entered on the next day after the decision on the motion, by the plaintiffs' attorney, for $14,222 61.

That the record is inartificially drawn up, may be readily conceded. The record should have presented the proceedings in the order of time in which they transpired, commencing with those on the rendition of the judgment. Then the subsequent application and proceedings had thereon, should have followed; but because this clerical error has transpired, it will not, we conceive, make the assignment of errors an assignment of errors in fact. We apprehend the counsel has been misled in this particular, and considered the question in a different aspect from that in which the proceedings appear. But are we to sacrifice substance to mere form? And is the inverted order of time in which the proceedings are presented here, to be a sufficient reason for refusing that justice which the very right of the case, as presented by the record, shall demand, and turn the party round to sue out a writ of error *coram vobis*, which has been disused and superceded by the more summary mode of a direct application to the Court for the rightful exercise of its own powers, over its proceedings and those of its officers?

We think the exception not well taken. The question presented in the Court below, was whether a judgment, unauthorized and illegal, had been rendered as to Sloo? That depended on the authority of McClintoc to authorize the confession in favor of the Bank, in the name of Sloo. The affidavit establishing the due execution of the power by McClintoc, filed with the declaration, and on which proof the judgment was ordered to be entered, shows that McClintoc, as the partner, without the consent or authority of Sloo, executed the power in question; and consequently

the legal point to be determined, is, whether such a power, so executed, will authorize the rendition of the judgment against the other partner, who neither authorized nor assented to the confession. Apart then from the affidavits on which Sloo based his application for setting aside the judgment as to him, the Circuit Court had, in the original proceedings, evidence entirely sufficient, on which to determine the irregularity of the proceedings and of the erroneous character of the judgment rendered, without recurring to evidence *aliunde* the record. It is true, the special errors assigned in this Court, go to the refusal to grant the motion, and do not specify this particular ground in the original record. Still we conceive we are bound to consider the whole proceedings as fairly before the Court, without regarding the manner in which the clerk has made them up, and that this portion of the record, as well as that relating to the facts stated in the affidavits by both parties, was equally before the Circuit Court, as it most clearly is here.

The defendants in error, having joined in error, might also be considered as waiving all objection, if the rigid rules of pleading were insisted on, the joinder being only considered as a demurrer to the assignment of errors in cases where the errors are not well assigned, and contradict the record. It is strenuously insisted, that this Court cannot decide this case without determining questions of fact without the record, in judging whether the Circuit Court erred in refusing to set aside the judgment on the application made, and that it has no jurisdiction for such purpose.

It is a sufficient answer to this objection to quote the jurisdiction expressly conferred by statute: " To determine all matters of appeal, error, or complaint from the judgment or decree, of any of the Circuit Courts of this State, and from such other inferior courts as may hereafter be established by law, in all matters of law and equity, wherein the rules of law or principles of equity, appear, from the files, records, or exhibits of any such court, to have been erroneously adjudged and determined."

It is then the judgment of the law on the facts, as they appear in the record, which is to be investigated to ascertain whether it has been correctly pronounced, as it shall appear to have been decided in the proceedings brought up, and not a new investigation of facts *de hors* the record. The expressions used in the statute defining the jurisdiction of this Court, we agree, are not to be extended to give this Court cognizance of cases in proceedings or judgments merely interlocutory; but we aver that whenever a decision takes place in any of the Circuit or inferior Courts of record of this State, which is final, and of which a record can be made, and which shall decide the right of property or personal liberty, complete jurisdiction is conferred on this Court to hear and determine the same. Coke, in his Commen-

taries on Littleton, saith, that "A writ of error lieth when a man is grieved by an error in the foundation, proceedings, judgment, or execution in a cause;" and can it be said there is no grievance in the rendering a judgment against one who is not summoned to appear in court, and who has not authorized the judgment, nor been, by his consent, a party to it? This Court having a revisionary power over all errors happening in the Circuit Court where the cause was prosecuted, and that Court having entertained jurisdiction of the cause, and of the particular point presented, it cannot now be objected here, that this Court has no power to revise those proceedings. It seems to us, that, if the reasoning of the defendants' counsel was correct, the adoption of his doctrine would lead to an almost entire subversion of the objects for which this tribunal was created. There is nothing, then, in the present case, to distinguish it from an ordinary case of a writ of error, and as such we proceed to the merits of the grounds assigned for error.

That the Circuit Court should have vacated the judgment as to Sloo, we cannot entertain a doubt; for, as has been before remarked, the affidavit of the witness to the execution of the power of attorney, under which the judgment was confessed and entered up, expressly declares that the power was signed by McClintoc for the firm of A. G. Sloo & Co., and it does not appear that McClintoc had the least authority whatever for doing the act.

Without then recurring, for the present, to the affidavits and proofs exhibited on the motion, the simple question is presented, whether one partner can confess a judgment in the name of his co-partner.

It is undeniable, that unless there be an express authority to the partner from the other, or he assent to it, the power of attorney executed by one partner in the name of the other, as to him, is void. The whole current of British and American authorities sustains this rule. Indeed we have not seen, nor do we know of a single case to the contrary.

In general, the power of attorney to confess the judgment, is accompanied by a bond, as evidence of the indebtedness or amount due.

How or when this peculiar security for a debt authorizing a creditor to sign a judgment and issue execution without even issuing a writ, was first invented, does not appear. Chitty, in commenting on it, says, "It has now become one of the most usual collateral securities on loans of money, or contracts to pay an annuity, and for debts due, but is usually accompanied with some other deed or security." It is also under seal. In the present case, the power has no seal, and it has therefore been supposed to place the case on a different footing from the adjudged cases, most of which assign, as a reason why one partner

cannot confess a judgment, in the name of the other, that he cannot bind the co-partnership by an act under seal. The ancient reason, in the earliest cases in which the question arose, was, that the seal of the other partner was his private property, and could not be subject to the control or use of the other. Another given is, that it is an act not within the limits of co-partnership business.

In the case of Harrison v. Jackson, Sykes, and Rushforth,(1) the agreement related to a partnership transaction, was under seal and executed by Sykes, the other partners not being present. In an action of covenant against the three partners, on this agreement, Lord Kenyon, who gave the opinion of the Court, said he admitted the authority of the partners according to the law merchant, or mercantile transactions, but denied that any power existed to bind each other by seal, unless a particular power be given for that purpose; and furthermore remarked, that it would be a most alarming doctrine to the mercantile world, if one partner could bind the others by such a deed as the one in question. It would extend to cases of mortgages, and would enable a partner to give a favorite creditor a real lien on the estates of the other partners. In the cases of Ball v. Demsterville,(2) Clement v. Brush,(3) Murphy v. Bloodgood,(4) Green v. Beal,(5) Motteux v. St. Aubin,(6) Ton v. Goodrich,(7) the same principle was recognised. In Pearson v. Hooker,(8) it was decided that one partner may release a debt due the partnership by a deed under seal.

Kent, Chief Justice, however, distinguishes this particular case from the class of cases referred to, "because there was no attempt to charge the partnership with a debt by means of a speciality, but it is the ordinary release of a partnership debt. Each partner is competent to sell the effects, or to compound, or discharge the partnership demands; each having an entire control over the personal estate."

The Supreme Court of New York, in the case of M'Bride v. Hogan, after an elaborate examination of all the cases bearing on this question, came to the conclusion, "That one partner cannot do any act under seal, to affect the interest of his co-partner, unless it is to release a debt." It follows, then, according to the recognised doctrine of these adjudicated cases, that this power of attorney, had it been under seal, would have been a case identical with those cited.

We may be permitted to ask, what difference there can possibly be in principle, and effect of the act done, in the cases cited, and the one under consideration. Whether the power to confess

(1) 7 Term R. 207.     (2) 4 Term R. 343.     (3) 3 J. C. 180.
(4) 9 Johns. 285.      (5) 2 Caines R. 254.   (6) 2 Black. 1133.
(7) 2 Johns. 213.      (8) 3 Johns. 68.

the judgment be under seal or not, can surely make no difference in its consequences or intended objects.—If the power is valid, not being under seal, the consequences and results of the act are precisely similar to those which the principles of the decisions cited, most strongly urge as unjust and illegal; and if void for want of a seal, the case is only thereby rendered more clear and certain.

To judge of the power of the partner, and the legality of his act, we are necessarily required to examine the consequences and effect of his act. And what are they? To subject all the private as well as joint property of the partner, both real and personal, to execution and sale; a still further consequence, his person to imprisonment, in execution of the judgment so confessed, without his authority or assent, express or implied—nay, against his most solemn protestations, or possibly obtained through misapprehensions, or fear, or through deceitful representations held out to a weak and indecisive mind; or it might happen by collusion, and for the purpose of fraud. When such results may be readily conceived—nay, be like to happen, can it indeed make any real difference whether the act, from which such consequences might flow, is or is not under seal? What magic is there in a scrawl, for that is, by our law, in effect, a seal? Can the legality, reason, or justice of the case, depend on a legal subtlety, or shall the case be decided on the broad and firm basis of reason and right?

We cast aside the distinction as unworthy the consideration of the tribunals of the present age, and unhesitatingly decide, that justice and right ought not in any case to be sacrificed to mere forms, however ancient they may be, or however numerous may have been the precedents produced. We do not, however, wish to be understood as discarding those which are essential to the correct and regular order of proceedings, and which are necessary to be observed in the proper and systematic conducting of cases.

We have thus far considered the case without reference to the affidavits read on the motion. From an examination of the contents of those, our opinion is strengthened as to the views already expressed. There can be no doubt, from the statement of McClintoc, and all those who testify on the part of the Bank, that McClintoc had no authority whatever, from Sloo, to make the power of attorney. The judgment is also for a much larger sum than was actually due at the time, it embracing contingent liabilities not then at maturity, and was, in fact, entered up for $14,222,61 more than was due, being the amount remitted on the next day after the Circuit Court refused to grant the application of Sloo.

An attempt is made to draw from some expressions of Sloo,

Sloo *v.* The State Bank of Illinois.

an inference of his sanction of the act of McClintoc, long after the power had been signed and delivered. It may be doubted whether a subsequent agreement to, or assent of, the act of McClintoc, after the judgment had been rendered on an invalid power, would legalize the irregular and unauthorized confession; but it is sufficient in the present case to say that, in our opinion, the attempt to establish such assent or approval has signally failed.

In every aspect in which this case can be viewed, we have no hesitation in saying that the judgment of the Circuit Court is erroneous and void, as to Sloo, having been entered up without authority, and that the Court below ought to have vacated the judgment on the application of Sloo. It is therefore ordered, that the judgment of the Circuit Court, as to Sloo, be reversed, and that Court directed to cause the execution thereon, as to Sloo, to be set aside. The plaintiff in error to recover his costs in this Court and the Court below.

*Judgment reversed* as to Sloo.

*Note.* After a general appearance by an attorney for both the defendants, who were partners, and the pleadings entered by him in the name of both, one of the defendants cannot plead that he was not served with process, and had not appeared in the suit. Field *v.* Gibbs *et al.,* 1 Peters C. C. R. 155.

A warrant of attorney to confess judgment, cannot be expressly revoked. A warrant of attorney authorized the confession of judgment at a certain term, for a certain sum, in an action of debt; and the judgment was confessed accordingly. *Held,* that the judgment was not erroneous, merely because the nature of the debt was not particularly described in the warrant.

The defendant's appearance to the action by attorney, prevents him from making any objection relative to the process. Eldridge *v.* Folwell *et al.,* 3 Blackf. 207.

Where an attorney appears for a party, the Court will look no further, but will proceed as if he had sufficient authority, and leave the party to his action against him. Jackson *v.* Stewart, 6 Johns. 34; Henck *v.* Todhunter, 7 Har. & J. 275; Harding *v.* Hull, 5 Har. & J. 478; Munnikuyson *v.* Dorset, 2 Har. & Gill, 374.

If an attorney appear for a defendant, (whether process has been served or not,) without his authority, and confess judgment, or let it go by default, the judgment is regular, and will not be set aside; but the attorney is liable to an action. Denton *v.* Noyes, 6 Johns. 296. See 4 Monr. 377.

But if there were fraud or collusion between the plaintiff and the defendant's attorney, or if he be not responsible, or perfectly competent to answer to his assumed client, the Court will relieve against the judgment. 6 Johns. 296.

A default for not pleading will be opened, if it were suffered by the neglect of an attorney who is insolvent. Meacham *v.* Dudley, 6 Wend. 514.

In Ohio, a party is not concluded by the acts of an attorney who appears without authority: and if no process has been served on the defendant, the Court will set aside a judgment, even at a subsequent term, obtained after such unauthorized appearance. Crichfield *v.* Porter, 3 Ham. 518.

Though in Kentucky an authority will be presumed, when an attorney appears for a defendant not served with process, yet if the defendant prove that he had no authority, his rights cannot be affected by the attorney's acts. Handley *v.* Statelor, 6 Litt. 186.

An appearance by an attorney without authority, is good. Rust *v.* Frothingham *et al.,* Breese 260.

Where an attorney commences an action in the name of another, or appears for another, the Court will presume he had authority to do so, until the contrary appears. Ransom *v.* Jones, *Ante* 291.