## Jackson *ex dem.* Livingston *against* Bryan.

*A* entered upon the land of *B*, with his permission, as a mere occupant, and without any reservation of rent, and made improvements, which he sold to *C*, who took possession—*B* sold the land to *D*, who brought an action of ejectment against *C.* It was held, that *C*, after 18 years possession, was to be considered as a tenant from year to year, and entitled to a notice to quit

THIS was an action of ejectment, brought to recover the possession of a lot of land, distinguished by lot number seven, in class number three, of the house lots in lot number seven, in the subdivision of lot number twelve, in the sixteenth allotment of the *Kayaderosseras* patent.

The premises originally belonged to one *Low*, and after his *attainder*, were sold in 1786, by the commissioners of forfeitures, to *Henry Livingston*, under whom the lessor of the plaintiff proved his title. In 1775, *Low* permitted one *Norton* to occupy the premises, and promised to pay for the improvements if he chose to quit. *Norton* went away with the *British* army during the *American* war, and died. In 1783, his family returned, and his son took possession of the premises. In *April* 1787, *Henry Livingston* gave permission to *Norton* to sell his improvements to one *Morgan*,

and that *Morgan* might take possession of the premises, and erect thereon such buildings as he thought proper.— *Norton* accordingly sold his improvements, and transferred the possession to *Morgan*, who, in the same year, sold them to the present defendant, for one hundred dollars. The permission given by *Henry Livingston* to *Morgan*, was in writing, but contained no conditions, or any reservations as to rent. At the time the declaration in ejectment was served on the defendant, he admitted that he went on the land, under the permission of *Henry Livingston ;* but said, that having been in possession near thirty years, he meant to keep it ; that the lessor of the plaintiff had, the last summer, offered to give him a lease, which he declined, as he thought his title as good as that of the lessor of the plaintiff.

NEW-YORK,
May, 1806.

Jackson *ex dem.*
Livingston
v.
Bryan.

The cause was tried at the circuit, at *Saratoga,* in *June* 1805, before Mr. Justice *Spencer,* who nonsuited the plaintiff, on the ground that the defendant was entitled to a notice to quit. A motion was made to set aside the nonsuit, and the case was submitted to the court, without argument.

Thompson, J. The title of the lessor of the plaintiff to the premises in question, is not denied, and the only point raised for decision is, whether the defendant was entitled to notice to quit, prior to the commencement of the action.— If the defendant is to be considered a tenant at will, it has been settled in this court, that notice to quit was not necessary ; if he is to be regarded as a tenant from year to year, notice was requisite, unless he has done some act amounting to a forfeiture of this right. I am inclined to think, that the defendant can certainly be viewed in no more favourable light, than as a tenant at will—He went into possession as a mere occupant, by permission of those under whom the plaintiff claims ; *there was no time limited for the enjoyment, nor any rent reserved, nor has any ever been paid ;* neither was there any stipulation to pay him for his improvements. *Henry Livingston,* under whom the lessor of the plaintiff claimed, had stipulated to pay *Gideon Morgan* (from whom the defendant got the possession) for his improvements. And it also appears, but from the defendant's own declarations

only, that *Henry Livingston* had given him (the defendant) permission to take off whatever he put on the land. But nothing appears to show, that the lessor of the plaintiff ever gave the defendant permission to occupy the premises, or made any promise to pay for his improvements. Under such circumstances, I should much question whether the defendant could be considered even a tenant at will. Admitting him to have stood in that relation to *Henry Livingston*, such relationship was destroyed by the conveyance to the lessor of the plaintiff. Courts, it is true, have latterly inclined against construing estates into tenancies at will—But such estates are recognised in our statute-book, and must have been recognised by this court, in the decision, that such tenants were not entitled to notice to quit. And if the defendant, in the present case, has any greater estate than a tenancy at will, I should be at a loss to determine what would be an estate at will, though it be said, (3 *Burr*. 1609†) that leases at will, according to the strict legal notion of a lease at will, being in the country found extremely inconvenient, exist only notionally. " Yet," says Mr. *Hargrave*, (*Coke Lit*. 55, *a*. Note 3 ) " this observation means not that estates at will, may not arise now as well as formerly, but only that it is no longer usual to create such estates by express words." (See also 3 *Salk*. 223. *Woodfall*, 188.) *De Grey*, C. J. says, (2 *Black. Rep*. 1173§) " all leases for uncertain times, are *prima facie* leases at will, and it is the reservation of an annual rent that turns them into leases from year to year. A general taking under another without limitation of time, or reservation of an annual rent, can be no other than an estate at will." (2 *Sid*. 153. *Carthew*, 101.) There is nothing, in such cases, to afford an implication of the renovation of the lease, after the expiration of a former time, which seems to be the basis upon which the doctrine of tenancies from year to year rests. (1 *Term Rep*. 162.|| 4 *Com. Dig*. 60.)

But admitting the defendant to have been a tenant from year to year, I should think that he had forfeited his right to a notice to quit, by disclaiming to hold under his landlord. It appears that in the summer, previous to the commencement

of the present suit, the lessor of the plaintiff offered to lease the premises to the defendant, but that the defendant told him he did not thank him for his offer, *that he had as good a title as he had.*

It also appears, that at the time the declaration in ejectment in this cause was served, the defendant, after some conversation with the witness about his improvements, declared that *he had been in possession more than thirty years,* and that he meant to keep it. This declaration was, in point of fact, untrue, for he had been there but about eighteen years, and it was setting up in himself a possessory title, in hostility to the right of the lessor of the plaintiff, who, upon the trial, he claimed to be his landlord. It is not denied, that these declarations of the defendant, if they had been made prior to the commencement of the suit against him, would have amounted to a forfeiture of his right to notice to quit. *(Buller N. P. 96.)* I cannot discover how their being made after the commencement of the suit, will make any difference. It is not the case of the landlord's *giving notice* to quit after the commencement of his suit, where notice was acknowledged to be necessary ; but it was deriving testimony from the confession and declarations of the defendant, to show that he had set up a title in himself, which was at war with the one he claimed upon the trial, and thereby placed himself in a situation, that did not require notice to quit. If the defendant be tenant to the lessor of the plaintiff, he is made so by operation of law, and not by any contract between the parties. There was nothing to prevent the defendant from setting up a title in himself, which he did by claiming to hold by virtue of thirty years possession ; his declarations were retrospective, and went to a denial that the relation of landlord and tenant ever existed between him and the lessor of the plaintiff, and that he intended to rely upon his adverse possession. That the confessions of a party were made after the commencement of the suit, can be no objection to their admissibility, in evidence against him. My opinion, therefore, is, that the nonsuit ought to be set aside, and a new trial awarded.

NEW-YORK,
May, 1806.

Jackson *ex dem.*
Livingston
v.
Bryan.

Spencer, J. The plaintiff was nonsuited at the trial, for not having given notice to quit. After the service of the declaration in ejectment, the defendant made declarations which may amount to a disclaimer of the title; but these declarations cannot aid the plaintiff, he ought to show a complete right to the possession prior to the day of the demise, and the institution of the suit. It appears that in the summer before, the defendant had refused a lease from *John Livingston*, saying he had as good a title as he had. This evidence I did not, at the trial, nor do I now think, evidence of a disclaimer, because, the defendant entered under *Henry Livingston*, and it did not appear that he had any information of the transfer of his title to the lessor. When a party who is tenant, has an indubitable right to notice, and it is sought to deprive him of it, on the ground of disclaimer, he ought to be made connuzant of the right of a third person demanding his possession. On the principle, therefore, that the defendant did not controvert *Henry Livingston's* title, and was a stranger to his alienee, I do not think that what he said was such a disclaimer, as to be a waiver of notice to quit, if by law he was entitled to it.—— This presents the only remaining question, whether the estate of the defendant was a tenancy at will, or for years. In the year 1788, the defendant went into possession, under a permission given by *Henry Livingston*, with leave to erect such buildings as were convenient. After so long a possession, and under such circumstances, it cannot, I think, be doubted, that the tenancy would be from year to year. *Christian*, in his notes to *Blackstone's* commentaries,† says, " a lease at will, is now considered a lease from year to year, which cannot be vacated without half a year's notice to quit," and he is supported by the text.§ Tenancies at will exist nominally, and good policy, as well as common justice, seems to demand that a holding, for an indefinite period, should be construed a tenancy from year to year; that no sudden determination of the estate, by the caprice of the lessor, should immediately dispossess the tenant; and, more especially, when he is in possession, not as a trespasser,

†2 *Black.* Com. 147, 9.

§3 *Burr.* 1609.

but by right, that he should not, without the least notice, be subjected to the costs of a suit in ejectment. It is true, that the reservation of a yearly rent, is one of the criteria by which to distinguish a tenancy from year to year ; but, in good sense, the landlord's right to sue for use and occupation, is equivalent to an express reservation of rent. I am still of opinion, that the nonsuit was right, and that the plaintiff should take nothing by his motion.

KENT, C. J. concurred.

TOMPKINS, J. I concur in the opinion that the plaintiff ought to be nonsuited. As the defendant held the premises by permission of the owner, without any agreement as to the tenure, and not for any limited period, or with the reservation of rent, I am disposed to regard him as tenant at will merely. The question then occurs, whether such a tenant is entitled to notice of the determination of his landlord's will, before he can be subjected to an action of ejectment ? If in the determination of that question, principles of policy and justice are to have weight, such notice will be deemed indispensible ; otherwise, an indigent tenant might, at the arbitrary discretion of a landlord, without a moment's warning, at an inclement season, and under circumstances of great embarrassment, be instantly deprived of a home, or submit to the costs of an action, ruinous to him. But upon the ground of authority, I am inclined to think, that a tenant at will is entitled to a notice to quit. The case of *Parker ex dem. Walker* v. *Constable*, 3 *Wilson*, 25, where this point was expressly adjudicated, in favour of the tenant, has not, as I can find, been overruled. In this case a notice of six months was deemed necessary. So where a parol lease for a longer term than three years is made, which the statute of frauds declares shall have no other or greater force and effect than a lease or estate at will, six months notice has been adjudged necessary. *Doe ex dem. Rigge* v. *Bell*, 5 *D. & E.* 471. The same motives of civil convenience which have induced courts, of late years, to construe estates at will into tenancies from year to year, operates

Vol. I.                    U u

NEW-YORK,  most strongly in favour of requiring a reasonable notice to a
May, 1806.  tenant, of the determination of the will of his landlord.

St. Croix          It is no where said that a notice is not necessary. Elemen-
v.          tary writers concur in saying that notice of some kind is ne-
Sands.     cessary, and the true rule to guide us is, that the notice must
be reasonable.   The period of six months appears to me to
comport with that rule ; and as I find that period adopted in
some authorities,  and not expressly negatived by any,  my
opinion is that it ought to be adopted here.

LIVINGSTON, J. being related to the lessor of the plaintiff,
gave no opinion.

Judgment of nonsuit.