Bulloch *vs.* The State of Georgia.

the following certificate: "I hereby certify that in consequence of the injurious effects of repeated attacks of sickness on the health of Robert M. Charlton, Esq. I have been compelled, as his medical adviser, to recommend an entire abstraction from all professional duty; particularly, attendance on the last May Term of the Superior Court at Savannah, as well as the Supreme Court to be held at Hawkinsville on Monday, 16th inst. And it is in accordance with my advice also, that Robert M. Charlton, Esq. has sought a restoration of his health, by travelling for a season at the North." Signed "P. M. KOLLOCK, M. D."

Messrs. CHARLTON and WARD, were the original counsel for plaintiff in error.

LAW, *contra.*

10   47
103  35

No. 4.—GEORGE J. BULLOCH, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] On the trial of an indictment against a bank officer for embezzling a large sum of money from the bank, evidence going to show that he was in straightened circumstances, and was dealing to a heavy amount, shortly before the larceny, in the purchase of lottery tickets, thereby creating a necessity upon him for the use of large sums of money, is admisible for the consideration of the Jury; especially when corroborated by confessions of the prisoner himself, of large losses in the lotteries, about the time of the larceny.

[2.] In such an indictment, the description of the bank bills by amounts, value, by what bank issued, and by whom signed and countersigned, is sufficient, without specifying the numbers of the bills and the dates thereof.

[3.] If some of the counts in the indictment be good and others defective, and a general verdict of guilty be returned, the intendment of the law is, that the Jury find the charge in the good counts to be true, and judgment will be awarded by the Court thereon.

[4.] When there are several counts in an indictment, charging different grades of the same offence, with punishments differing in degree only, but of the same nature, and the Jury return a general verdict of guilty, the judgment will not be arrested, but the Court will award judgment for the highest grade of the offence charged in the indictment.

[5.] The Court, in charging the Jury, does not violate the Act of 1850, in explaining to them the nature and effect of direct and circumstantial evidence.

[6.] The principal offender and accessaries after the fact, may be properly included in the general count in the indictment, and when so charged in the manner prescribed by the Penal Code of this State, the charge against the principal, and the charge against the accessaries, will not be considered as *separate* and *distinct* counts, but the accusation against all will be considered as embraced in one count; especially when each count commences and concludes in the manner and form required by the Code, and such conclusion at the end of each count against such principal and accessaries, is sufficient.

Indictment for larceny after a trust delegated or confidence reposed. In Chatham Superior Court. Tried before Judge H. R. JACKSON, January Term, 1851.

The plaintiff in error was placed upon his trial, upon issue joined on the following indictment: The first count was as follows: "For, that the said George J. Bulloch, of said County and State, on the 27th of February, 1850, in the County aforesaid; the said George J. Bulloch being then and there a person employed in the Central Railroad and Banking Company of Georgia, a bank and corporate body in the said State of Georgia, chartered by the Legislature of said State of Georgia, doing business in the County and State aforesaid, under the name and style of the Central Railroad and Banking Company of Georgia; and then and there holding the office and employment of Cashier in the said the Central Railroad and Banking Company of Georgia—one bank bill for the payment of five dollars, and of the value of five dollars, of the said the Central Railroad and Banking Company of Georgia, signed by the President thereof, R. R.

Cuyler, and countersigned by the Cashier thereof, George J. Bulloch, (proceeding to describe in the same terms, other bills of the denomination of *ten, twenty, fifty and one hundred dollars*,) of the aforesaid bank bills, being the property of the said the Central Railroad and Banking Company of Georgia, and then and there being found and entrusted with him, the said George J. Bulloch, by virtue of his office and employment as Cashier of said bank as aforesaid, then and there feloniously did embezzle, steal, secrete, and frandulently take and carry away, to the great damage of the said Central Railroad and Banking Company of Georgia." And that, &c.

The *second, third, fourth and fifth* counts were similar to the first, respectively and separately charging Bulloch with embezzling, stealing, secreting and fraudulently taking and carrying away the money described as above. The *sixth* count was similar, except it described the bills as follows: " One bank bill for the payment of twenty dollars, and of the value of twenty dollars, made and issued by the said the Central Railroad and Banking Company of Georgia ; the said sum of money aforesaid being due and unpaid thereon." The *seventh* count was similar, except it described certain of the bills as follows : " One bank bill for the payment of twenty dollars, and of the value of twenty dollars, made and issued by the said the Central Railroad and Banking Company of Georgia, signed R. R. Cuyler, President, and George J. Bulloch, Cashier, payable to Wm. Crabtree or bearer, and dated the 11th day of July, 1848 ; the said amount of money being then and there due and payable thereon, the said bank bills being then and there the property of the said the Central Railroad and Banking Company of Georgia." The *eighth* count was similar, except it described the money stolen, as " certain bank bills of the said the Central Railroad and Banking Company of Georgia, for the payment of one hundred and three thousand dollars, and of the value of one hundred and three thousand dollars, being the property of the said, &c." The *ninth* and *tenth* counts were substantially the same as the *eighth*. The *eleventh* count was framed under the XXXVIth Section of VIth Division of the Penal Code, differing from

the former counts in not charging that the money was entrusted to Bulloch *as Cashier;* and simply charging that the bills were entrusted to him, and fraudulently converted by him, to his own use.    The *twelfth* count was similar and substantially the same with the *eleventh.*

The evidence in this case, showed that the defendant below was Cashier of the Central Railroad and Banking Company, at the time charged; that up to a short time before, 27th February, 1850, he acted both as Cashier and Teller.    By his own account, on 2d February, 1850, he had in his hands of the funds of the bank, $120,000.    On 29th January, 1850, a new issue of bills was made to the amount of $35,000, a large portion of which, must have been in the hands of defendant on 27th February, 1850.    The bank lost about $103,000 of the $120,000 in the hands of Bulloch.    On 26th February, 1850, Bulloch was seen in the bank for the last time.    On 27th, R. R. Cuyler, President, left Savannah for Macon for a few days.    On his return, found that Bulloch was gone—opened the vault in presence of Board of Directors, and found therein between 16 and $17,000 in promiscuous notes, chiefly small.    Bulloch told the President frequently, that he found it very difficult to get along with his private affairs, being heavily pressed by a large judgment.    After Bulloch disappeared, the bank offered a reward of $5,000 for his apprehension.    He was arrested in England and brought back to Savannah.    On the day of his return, R. R. Cuyler went to see him, and had a conversation with him, in the course of which, he told Mr. Cuyler that he had dealt largely in lottery tickets; that in December, 1849, he drew two prizes, one of $10,000, and another of $2,000, which he appropriated to replace money which he had previously taken to purchase lottery tickets, and that this made his accounts good on the 1st January, 1850; that in February, 1850, he lost in the purchase of lottery tickets, $15,000.    Bulloch said in the same conversation, that he lost his keys at one time for three days, and found them in his drawer at the bank, and then discovered that the money had been stolen.    He told no one of it, because he thought no one would believe him.    He said he lost at that time, $110,000.

Bulloch *vs.* The State of Georgia.

He did not suspect any one particularly.   Mr. Cuyler testified further, that on the 2d March, 1850, Mr. Wm. H. Bulloch delivered to witness, a bundle of papers which he said a servant had brought to him, and which he felt bound to deliver to the Board of Directors.   These were a package of lottery tickets enclosed to Maury & Co. with the following letter in George J. Bulloch's hand-writing:

" GENTS.—I enclose you certificate and prize tickets, which, please examine and send me a check on New York for the proceeds, and oblige                THOS. J. BULLOCH.

*Savannah, February 28th,* 1850.

Messrs. J. & C. Maury & Co.    *Alexa.*"

The tickets bore date from 1847 down to 1850.

To the admission of this evidence as to these lottery tickets, counsel for defendant objected on the ground that the same was irrevelant.   The Court overruled the objection.

It appeared from the evidence that Bulloch, as Cashier of the bank, had several shares of stock in the bank, standing in his name.

Much other evidence was introduced, which it is unnecessary to refer to, for the purpose of understanding the errors assigned.

The Jury returned a verdict of "guilty," whereupon a motion was made in arrest of judgment, on the grounds :

1st.  Because in no count in the indictment, were the bank bills alleged to have been stolen, sufficiently described, so as to enable the owner to identify them.

2d.  Because upon an indictment in which some of the counts were defective, and in which different offences were charged, and for which different punishments are by Statute inflicted, a general verdict of guilty was rendered, without specifying the count or counts upon which the defendant was found guilty.

At the same time (by consent) a motion was made for a new trial, on the following grounds :

1st.  Because the Court erred in stating to the Jury, that there was force in the argument of the Solicitor General, that

the objection of the defendant's counsel to the description of the property in the indictment, had come too late, being made after recording the prisoner's plea and proceeding with the trial of the cause.

2d. In charging the Jury that the bank bills alleged to have been stolen, were sufficiently described in some of the counts in the indictment.

3d. In charging the Jury that defendant could be convicted of larceny of the bank bills which had been entrusted to him as the Cashier of the Central Railroad and Banking Company, whilst as Cashier, he was one of the stockholders of the said bank, and a number of the shares of said bank being held in his name as Cashier.

4th. In charging the Jury that after a larceny had been proved to have been committed, it was not necessary to prove the guilt of the prisoner by any positive evidence.

5th. In charging that the possession or use of more money than the prisoner could honestly account for, was evidence of guilt.

6th. In charging that the prisoner's absconding or concealing himself, was considered by the law evidence of guilt.

7th. In admitting in evidence, a large number of lottery tickets which had been purchased and drawn before the proof of any larceny alleged to have been committed by the defendant, without any proof that they had ever been in, or had come from the possession of the defendant.

8th. In admitting in evidence proof of the purchase of lottery tickets by the defendant before the alleged larceny was proved to have been committed, and at a time when, by the testimony of the witnesses for the prosecution, the money alleged to have been stolen was in possession of the Central Railroad and Banking Company.

9th. That the presiding Judge erred in expressing and intimating to the Jury his opinion as to what had or had not been proved.

10th. In expressing and intimating his opinion as to the guilt of the accused.

11th. Because the charge was contrary to law.

12th. Because the verdict was contrary to law.

13th. Because the verdict was contrary to evidence.

14th. Because a general verdict of " guilty " has been rendered upon an indictment in which some of the counts are defective, and in which different offences are charged, and for which, different punishments are prescribed.

The presiding Judge refused to arrest the judgment or grant a new trial.

Upon these several decisions of the Court, the following errors were assigned :

1st. That the Court erred in admitting the said lottery tickets in evidence, the same being irrelevant to the issue joined.

2d. That the Court erred in deciding and holding that the bank bills alleged to have been stolen, were sufficiently described.

3d. That the Court erred in refusing to arrest the judgment, on the ground that the indictment contained defective counts, and counts in which different offences were charged, and different punishments inflicted by the Statute ; and that a general verdict of guilty had been rendered, without specifying the count on which the defendant was found guilty.

4th. That the Court erred in charging the Jury, " that it was competent for them to look to circumstantial testimony, as for instance, the acts and conduct of the accused, to ascertain guilt ; such as his absconding and concealing himself for the purpose of escaping the laws, or his being possessed of, or using large sums of money which he could not honestly account for."

5th. Because the verdict is contrary to law, in this, that the offence for which the defendant is indicted is created by Statute, and the indictment does not conclude *contra formam Statuti*, nor in the manner prescribed by the Penal Code of this State.

John E. Ward, presented his own brief and that of John M. Berrien, for plaintiff in error.

Law and Bartow, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

The plaintiff has assigned five distinct grounds of error to the judgment of the Court below in this case, which we shall consider in the order the same appear in the record before us.

[1.] The first ground of error assigned is, that the Court erred in admitting in evidence sundry lottery tickets contained in a package addressed to Maury & Co. with a note written by the defendant, directing the proceeds of the tickets to be remitted to his brother.

The objection urged to the admission of this evidence is, that it appears from the record, that these tickets were purchased *anterior* to the time the money is proved to have been taken from the bank, and therefore, irrelevant testimony.

It appears from the record, that the defendant was the Cashier of the Central Railroad and Banking Company, and had the custody of the money and funds belonging to that institution; that on the 2d day of February, 1850, by his own showing, he had in his hands the sum of $120,000; that on or about the 27th of the same month, there was $103,000 taken from the bank, and the defendant absconded from the State about the same time to England, where he was arrested and brought back. It also appears, that the defendant was embarrassed in his pecuniary matters previous to that time, saying it was difficult for him to get along with his private affairs, being pressed by a large judgment, and it was exceedingly difficult for him to live. After the defendant was brought back to Savannah, he admitted to Mr. Cuyler, the President of the bank, that he had been dealing in lottery tickets, and commenced doing so the preceding fall; that his losses in February by lotteries, could not have exceeded $15,000 in that month. The defendant also stated, that in December he drew two prizes in the lotteries, amounting to $12,-000, and that money went to replace money which he had previously taken to purchase lottery tickets, and it made his money good at the end of the month.

There is no *positive* evidence that the defendant took the money from the bank; his guilt can only be established by circumstantial evidence, that is to say, by proof of such facts and

circumstances, as will conduce to establish his guilt in the minds of reasonable men.   When a great crime has been committed, it is important to inquire whether the accused party was influenced by any *motive* to commit such an offence, for the absence of *all motive* to commit the offence charged against him, affords a strong presumption of his innocence; whereas, if it appears on the contrary, that he was influenced by a very *strong motive* to commit the particular offence charged, the probability of his guilt is necessarily greatly strengthened.

Now, the offence with which the defendant stands charged in the indictment is, that as the Cashier of the Central Railroad Bank, he did embezzle, steal, secrete and fraudulently take and carry away, a large amount of money which had been entrusted to him as such Cashier.   To purchase these lottery tickets, a considerable sum of money was required, as is manifestly apparent to every reasonable mind.   But it is urged by the defendant's counsel, that these tickets were all purchased before the money is proved to have been taken from the bank, and therefore, cannot afford any presumption of his guilt.   Concede for the purpose of this investigation, that McAlpin and Fay, the directors who counted the money, were not *deceived* or *mistaken,* as to the money being in the bank on the days which they profess to have counted it—yet the evidence of the lottery tickets shows, that to have purchased them, the defendant must have had money obtained from some quarter.   Did he borrow the money to purchase the tickets from a friend, or did he purchase the tickets on a credit?   Still the purchase of the tickets created a *necessity* for money; especially, as the defendant was in debt, and hard pressed to live.   The purchase of a great number of lottery tickets, *anterior* to the loss of the money by the bank, by the defendant, created a *necessity* for him to have money to pay for them.   The purchase of the tickets created a debt, which the defendant was bound to pay, either with his own money, or that entrusted to him by other people.   By his own confessions, he had no spare cash of his own, with which to purchase lottery tickets.   Did he borrow the money from his friends or other persons to purchase them, before the money was taken from the bank?   If so, he

still had a use for money to pay that debt, and who would be most likely to take money entrusted to him, he who had purchased nothing which created a demand for money, or one who had a *pressing necessity* for it to pay for lottery tickets? The fact that the defendant had purchased a large number of lottery tickets before the money was taken from the bank, taken in connexion with his pecuniary embarrassments, affords evidence of at least a *motive* on his part, to have the *use of money;* and as such, it was properly submitted to the Jury, as a circumstance taken in connexion with the other evidence, affording a presumption of his guilt. The question is not as to the *effect* which this evidence may have had on the minds of the Jury, but was it *competent* to introduce it on the trial, when taken in connexion with the other facts exhibited by the record? We think the evidence offered, was competent, for the reasons already stated.

[2.] The second ground of error alleged in the assignment is, that the Court erred in deciding that the bank bills, charged to have been stolen, were sufficiently described in the indictment.

By the 33d section of the 6th division of the Penal Code, it is declared, that "Any *officer*, servant or other person employed in any *bank* or other corporate body in this State, who shall embezzle, steal, secrete, or fraudulently take and carry away any money, gold or silver bullion, note or notes, *bank bill* or *bills*, bill or bills of exchange, &c. shall, on conviction, be punished by imprisonment and labor in the Penitentiary, for any time not less than two years, nor longer than seven." *Prince*, 631.

The defendant is accused in the indictment, with embezzling, stealing, secreting and fraudulently taking and carrying away, one bank bill for the payment of five dollars, and of the value of five dollars, of the Central Railroad and Banking Company of Georgia, signed by the President thereof, R. R. Cuyler, and countersigned by the Cashier thereof, George J. Bulloch, while holding the office and employment of Cashier of the said Central Railroad and Banking Company of Georgia.

The defendant is also charged with embezzling, stealing, secreting and fraudulently taking and carrying away other denominations of the bills of said bank, to wit: ten dollar, twenty dol-

lar, fifty dollar and one hundred dollar bills—each denomination of the bills described in the same manner in the indictment as the five dollar bill. The objection is, that the bank bills are not sufficiently *described* in the indictment. The general rule is, that every indictment must charge the crime with such certainty and precision, that it may be understood; alleging all the requisites that constitute the offence, and that every averment must be so stated, that the party accused may know the *general nature of the crime of which he is accused.* 1 *Chitty's Crim. Law, marginal page,* 172. The defendant is accused with having stolen sundry bank bills of a particular denomination, and of a particular value, of the Central Railroad and Banking Company of Georgia, signed by the President of that company, and countersigned by the Cashier thereof, the same being the property of that bank, which were entrusted to the defendant as such Cashier. This description of the bills alleged to have been stolen by the defendant, is sufficient, in our judement, to inform him of the *general nature of the offence* of which he is accused. If a more minute description should be required, as for instance, the date and letter of each bill, a conviction under this section of the Code would, in most cases, be impossible. The Legislature have made the stealing of bank bills larceny, and there exists no good reason why there should be a more *minute* description of *bank bills,* than of *chattels* which are made the subject of larceny. The description of the bank bills in this indictment, is equally as minute and specific, as that contained in the form of a similar indictment in *Archbold's Criminal Pleading,* 130. See, also, *Rex vs. Johnson,* 3 *Maul & Selwyn,* 539, 553. *Commonwealth vs. Richards,* 1 *Mass. Rep.* 337. But the 1st section of the 14th division of the Penal Code, answers the objection raised by the plaintiff in error. By that section of the Code it is declared, that "Every indictment or accusation of the Grand Jury shall be deemed sufficiently technical and correct, which states the offence in the terms and language of this Code, or so plainly that the *nature of the offence charged* may be easily understood by the Jury." *Prince,* 658. Nor do we entertain a doubt, that the defendant could plead the present indictment in bar of

another prosecution for the same offence, and with the proper averments contained in such plea, would be protected.

[3.] The third ground of error assigned is, that the Court refused to arrest the judgment, on the ground "that the indictment contained *defective* counts, and counts in which different offences were charged, and different punishments inflicted by Statute, and that a general verdict of guilty had been rendered, without specifying the count on which the defendant was found guilty." It is a well settled principle in Criminal Law, that where there are several counts in an indictment, some of which are good, and others bad or *defective*, that judgment may be rendered against the defendant upon those which are valid. 1 *Chitty's Crim. Law, margtnal page,* 249. *Ib.* 640. *The People vs. Curling,* 1 *John. Rep.* 322. *The State vs. Miller,* 7 *Iredell's Law Reports,* 275. By the 33d section of the 6th division of the Penal Code, the *officer of a bank* who commits a larceny after a trust has been delegated, or a confidence reposed, may be punished by imprisonment in the Penitentiary, for any time not less than *two,* nor more than *seven* years. By the 36th section of the same division of the Penal Code, any person *not an officer* employed in any public department of the government or *corporate body,* who shall be convicted of the same offence, may be punished by imprisonment in the Penitentiary for any time not less than *one* year, nor longer than *five* years.

[4.] In some of the counts in the indictment, the defendant is charged with the offence, as the *Cashier* of the Central Railroad and Banking Company of Georgia; in others, he is charged with the offence in his *individual,* and not in his *official* capacity as Cashier. The point made by the plaintiff in error then is, that inasmuch as there are different counts in the indictment, based upon the two different sections of the Statute, and the punishment under each section being different in *degree,* therefore the judgment ought to be arrested, because the Jury have found a general verdict of guilty, without specifying upon which particular count they intended to find him guilty, so as to enable the Court to pronounce the appropriate judgment. It has been urged in the argument, that the Court cannot know whether the

Bulloch *vs.* The State of Georgia.

Jury intended to find the defendant guilty of the offence, under the 33d section or under the 36th section of the Code, and that this is a material question, because the punishment prescribed under the two sections is different in degree. By the 16th section of the 14th division of the Penal Code, it is declared, that " On every trial for *any crime or offence,* the Jury shall be judges of the law and the fact, and shall, in every case, give a *general* verdict of guilty or not guilty." *Prince,* 660. The question is not whether the Court should have quashed this indictment on demurrer, or compelled the prosecuting officer to elect on which count of the indictment he would try the defendant, but the question here is, whether the *judgment shall be arrested.* As a general rule of criminal pleading, a defendant cannot be charged with *distinct* offences in the same indictment; as for instance, larceny in one connt, and perjury in another, for the reason that it would necessarily embarrass him in his defence; for he might be willing that a Juror should try him for one offence and not the other; but the same offence, that is to say, the same *species* of the offence may be charged in different ways, in several counts, in order to meet the evidence. *Archbold's Crim. Pleading,* 30, 31. It is no objection to an indictment, that the punishment of the offence in one of the counts is *positive,* and in the other *discretionary;* for after a general verdict, the objection of misjoinder may be avoided, by entering up judgment upon a *particular count.* 1 *Chitty's Crim. Law, marginal page,* 255. The defendant is not charged with two distinct offences in this indictment, but he is accused in all the counts with the offence of " larceny after a trust delegated and confidence reposed".

There is nothing in the different counts which would have a tendency to embarrass him on his trial, or to deprive him of any legal right. The character of the offence is the same in all he counts, and he was entitled to the same number of peremptory challenges, in the selection of his Jurors, to try him upon each and every count in the indictment. The stealing the bank bills as the *Cashier* of the bank, after a trust delegated and confidence reposed, and stealing the same without being employed in any *official* capacity, constitutes the only difference. In any view of

the question, the offence is stealing the bank bills of the Central Railroad and Banking Company, after a trust delegated and confidence reposed. But it is urged, that stealing the bills as Cashier, is in view of the Statute, a *higher grade* of the offence, than if he stole them without being such Cashier. Admit it to be so, and what is the legal inference from the general verdict of guilty found by the Jury? Both counts in the indictment being good, the presumption of the law is, that the Jury intended to find him guilty of the highest grade of the offence charged in the indictment, as much so as if on an indictment for murder, containing two counts, one for murder and the other for manslaughter, the Jury had returned a general verdict of guilty. On the trial of an indictment containing two counts, one for murder and the other for manslaughter, and a general verdict of guilty found by the Jury, the defendant would be punished for the higher grade of the offence, for the reason, that the Jury having found the defendant guilty *generally*, the presumption of the law is, that they intended to find him guilty of the highest offence with which he was charged in the indictment—murder and manslaughter being the same *species* of crime, to wit: *homicide*, but differing only in the *degree* of guilt. So in the case before us, the defendant is charged in all the counts of the indictment with the same *species* of crime, to wit: *larceny after a trust delegated and confidence reposed*, but differing only in the *degree* of guilt which attaches to the offence, when committed under the 33d section or the 36th section. The count in the indictment which charges the defendant with stealing the bank bills from the bank, as the Cashier thereof, under the 3d section, being a good count, and the Jury having found him guilty *generally*, it is competent for the Court to award judgment against him upon that count, and the motion in arrest of the judgment was properly overruled by the Court below, both upon principle and authority. *Archbold's Crim. Pleading*, 31. *Young and others vs. The King*, 3 *Term R.* 106. *The People vs. Rynders*, 12 *Wendell's Rep.* 426. *Josselyn vs. The Commonwealth*, 6 *Metcalf's Rep.* 236. *Harman vs. The Commonwealth*, 12 *Serg. & Rawle's Rep.* 69. *The King vs. Darby*, 4 *East*, 179. *The United States vs. The Pirates*, 5 *Wheaton*,

207. 4 *Cond. Rep. Supreme Court U. S.* 636. In the last case cited, it was held, that each count in an indictment is a substantive charge, and if the finding conform to any one of them, which in itself will support the verdict, it is sufficient to give judgment. Besides, the 2d section of the 14th division of the Penal Code declares, that "No motion in arrest of judgment shall be sustained for any matter not affecting the *real merits of the offence* charged in the indictment." *Prince,* 659.

[5.] The fourth ground of error taken in the assignment is, that the Court, in charging the Jury, stated, "That it was competent for them to look to circumstantial testimony, as for instance, the acts and conduct of the accused, to ascertain his guilt; such as his absconding and concealing himself for the purpose of escaping the laws, or his being possessed of or using large sums of money, which he could not honestly account for." It is insisted, that the Court in this charge violated the provisions of the Act of the 21st February, 1850, which prohibits the Judges of the Superior Courts of this State, to express or intimate their opinions as to what has or has not been proved, or as to the guilt of the accused. *Pamphlet Laws,* 1850, 271. On looking to the charge of the Judge, as certified by him in this record, we think there is no foundation for this objection. The presiding Judge expressly states, that he did not, in any part of his charge, express or intimate, in the remotest manner, his opinion as to what had or had not been proved, or his opinion as to the guilt of the prisoner, but, on the contrary, was extremely guarded on that point.

[6.] The fifth ground of error which has been taken and urged before this Court is, that the offence for which the defendant is indicted, is created by Statute, and the indictment does not conclude, *contra formam statuti,* nor in the manner prescribed by the Penal Code of this State.

By the 1st section of the 14th division of the Penal Code, the form of every indictmant or accusation is prescribed, including the *commencement* and the *conclusion* thereof. *Prince,* 658.

Whatever may have been the rule before the enactment of this Code by the Legislature, all indictments for offences under it

are now to conclude, after stating the offence, "contrary to the laws of said State, the good order, peace and dignity thereof." But it is said the several counts in this indictment do not so conclude as against the defendant, Bulloch, and to maintain that position, it is assumed, that there are twenty-four counts in this indictment, instead of twelve. How is the fact? Is the accusation against Bulloch, as the principal offender, contained in a *separate* count against him, independent of James Quantock and George Thrift as accessaries, or are they all accused in each count, the one as having actually committed the offence, the others, as being accessaries after the fact? Each count in the indictment charges and accuses George J. Bulloch with the offence of larceny, after a trust delegated and confidence reposed, and James Quantock and George Thrift as being accessaries thereto, after the fact, and after stating the offence against both, as directed by the 1st section of the 14th division of the Code, concludes in the manner prescribed thereby, as being "contrary to the laws of said State, the good order, peace and dignity thereof." This indictment is believed to have been framed by the pleader in strict conformity with the English precedents. After stating the offence of the principal, (says Mr. *Archbold,*) and immediately *before the conclusion of the indictment,* charge the accessary after the fact, thus, &c. *Archld'bos Crim. Pleading,* 401. In each count of this indictment, the accusation is made against all three of the defendants; the offence of the principal offender is stated, and before the *conclusion* of each count, the accessary after the fact is charged in accordance with the most approved English precedents, and then each count *concludes* in the manner prescribed by the Penal Code. We cannot for a moment doubt that the pleader, in framing this indictment, upon any thing like a fair construction of it, included the principal offender, and the accessaries after the fact, in one and the same count, and that he so intended, is obvious from the commencement and conclusion of each and every one of the counts. There being, in our judgment, but twelve counts in the indictment, each one concluding in the manner and form pre-

scribed by the Penal Code of this State, the fifth ground of error assigned upon the record must be overruled.

Having disposed of all the grounds of error assigned to the judgment of the Court below, contained in the record, it only remains for us to declare that judgment to be affirmed.

Judgment of the Court below affirmed.