HARMON T. HARRIS, Appellant, *v.* DAVID H. FRINK et al., Respondents.

One who enters upon the lands of another and puts in crops under a parol license and a parol agreement that he shall have the crops raised by him, is entitled to the crops, and, in case he is expelled from the land and the crops are converted by the owner or his agent, can maintain an action for such conversion. (GROVER, J., dissenting.)

The expenditure of money and labor under and induced by the agreement is a good consideration therefor.

Where, under a parol contract for the sale of land, the vendee, with the consent of the vendor, in pursuance of the terms of the contract, enters into possession and puts in crops, the invalidity of the contract to sell and convey does not affect the vendee's title to the crops, and if the vendor refuses to perform and ejects the vendee, the title of the latter to the crops is not thereby divested. In such case, the crops, as between the parties, are not a part of the realty, but chattels. (GROVER, J., dissenting.)

The statute of frauds cannot be invoked by the party who refuses to perform, as against one not in default, for the purpose of invalidating that part of the contract which has been executed, and the latter cannot be compelled to relinquish any benefit he has acquired from its partial performance.

Although a vendee, by a partial performance of a parol contract of purchase of lands, may have become entitled to a specific performance in equity, if, after a refusal of the vendor to perform, and ejectment of the vendee, an agent of the vendor converts the crops put in by the vendee while in possession, in an action against the agent for such conversion, he cannot set up the vendee's equitable title for the purpose of depriving the latter of his property in the crops.

Where a vendee, under a parol contract of purchase, enters upon land with the permission of the vendor, and under an agreement that he may occupy and work it until the vendor is prepared to convey, he is a tenant at will, and, as such, is entitled to the emblements, unless he has made default in his contract or committed waste, or, in some other manner, terminated the tenancy by his own wrongful act. (ALLEN and GROVER, JJ., dissenting.)

(Argued February 22, 1872; decided March 26, 1872.)

APPEAL from judgment of the General Term of the Supreme court in the eighth judicial district, entered upon an order denying motion to set aside a nonsuit and for a new trial. (Reported below, 2 Lansing, 35.)

The action was to recover possession of a quantity of oats raised by plaintiff upon land of Charles W. Frink, for whom defendants were agents, of which land plaintiff had possession under a parol agreement to purchase. Plaintiff was nonsuited upon the opening of his counsel to the jury. The allegations in the opening are set forth in the opinion. Exceptions were ordered to be heard at first instance at General Term.

*Thomas M. Webster* for the appellant. Plaintiff was a tenant at will. (*Jackson* v. *Moncrief*, 5 Wend., 26 ; *Jackson* v. *Miller*, 7 Cow., 747 ; *Lowry* v. *Tow*, 3 Bar., Ch., 407 ; *Wright* v. *Moore*, 21 Wend., 231 ; *Suffern* v. *Townsend*, 9. J., 35 ; *Howard* v. *Shaw*, M. & W., 118 ; *Warring* v. *King*, M. & W., 571 ; *Peckham* v. *Leary*, 6 Duer, 498 ; *Burns* v. *Bryant*, 31 N. Y., 453.) As such, he was entitled to the emblements. (Chitty on Con., 325 ; Story on Con., § 956 ; 2 Blackstone, 258.) The crops being put in with consent of owner, defendant was entitled to them. (*Like* v. *McInstry*, 41 Bar., 186 ; *Bennett* v. *Scutt*, 18 Bar. ; *Pierpont* v. *Barnard*, 2 Seld., 279 ; *Herrick* v. *Kem*, 2 Am. L. C., 682.)

*S. Parsons* for the respondents. The verbal contract was so far consummated as to take the case out of the statute of frauds. (8 Paige, 600 ; 5 Wend., 638 ; 26 id., 238 ; 41 Bar., 619, 635 ; Fry on Spec. Per., 258.) If plaintiff was entitled to specific performance he was equitable owner. (3 Bar. Ch., 407 ; 40 Bar., 537.) Plaintiff was not, in any sense, a tenant. (7 Bar., 74 ; 6 J., 46 ; 25 Bar., 243 ; 31 id., 286.) Plaintiff having been turned out of possession cannot maintain replevin. (8 Cow., 220 ; 3 Den., 79 ; 34 N. Y., 363.) At law, contract was void, and plaintiff had no title to the land or the crops. (8 Wen., 584 ; 2 Den., 174 ; 6 Bar., 370 ; 1 Bar. Ch., 613.)

RAPALLO, J. The crop of oats in controversy was alleged, in the opening of the plaintiff's counsel, to have been sowed by the plaintiff while in possession of the land under a parol

contract of purchase. It was also offered to be shown that the crop was raised with the consent of the vendor, it having been a part of the agreement that the plaintiff should go into immediate possession of the farm, and work it until the defendants, who were the agents of the vendor, should be ready to carry out the agreement of sale; that the defendants assisted the plaintiff in putting in the crop, receiving pay from him for their work as hired men by the day; that afterward, in the month of May, the defendants expelled the plaintiff from the farm and repossessed themselves of it, and the vendor refused to convey pursuant to the agreement; that, when the crop was ripe, the plaintiff commenced harvesting it, but was driven off by the defendants, who took possession of the oats and harvested them. The plaintiff also offered to prove that the defendants had admitted that the crop belonged to him. The judge, at the trial, nonsuited the plaintiff on this opening, and exception was duly taken.

No question appears to have been made as to the authority of the defendants to represent and act for the vendor, who was their brother; but the nonsuit appears to have been granted and sustained at General Term on the ground that the crop was part of the realty, and that the plaintiff, having no legal title to the land, could have none to the crop; that he was not a tenant, for the reason that no action would lie against him for use and occupation; and further, that having been ejected and kept out of possession of the land, he could not maintain any action for taking the crop when he was out of possession.

The contract of sale, not being in writing, was void by the statute of frauds; but the plaintiff's possession under it was lawful, so long as he made no default. He was in possession under a parol license from the owner to occupy and work the farm until a conveyance should be executed pursuant to the agreement of sale. The invalidity of that agreement enabled the vendor to revoke the license at any time. It did not vest in the plaintiff the title to the land, but does it necessarily follow that he acquired no title to

the crop which he had sown in reliance upon the owner's permission to occupy and work the farm? Under some circumstances a growing crop is part of the realty and passes with it; but in many cases it is treated as a chattel. It may be owned by one person, while the title to the land is wholly in another, and this result may be brought about either by operation of law or by express contract. When planted by the owner of the soil, it constitutes in general part of the realty, and will pass to the vendee by a conveyance of the land; but the owner of the soil may sell a crop to be cut without conveying any interest in the land, and the purchaser will acquire title to it as a chattel, even though not fit for harvest at the time of the sale. (*Evans* v. *Roberts*, 5 B. &. C., 829; *Jones* v. *Flint*, 10 A. & E., 753; *Safflsbury* v. *Matthews*, 4 M. & W., 343; *Craddock* v. *Riddlesbarger*, 2 Dana, 206; *Newcomb* v. *Ramer*, 2 J. R., 421, note *a;* *Austin* v. *Sawyer*, 9 Cow., 39, 42, 43.) So if a lessor covenants with a lessee for years that he shall have the emblements, the property in the corn is well transferred, though it be not severed during the term. (*Hobart*, 175.)

And it is not necessary to the validity of an agreement by the owner of the soil, whereby another acquires an interest in the crops, that the relation of landlord and tenant should exist between them. An agreement to allow one to work land on shares for a single crop is no lease of the land; but the parties to such an agreement become tenants in common of the crop. They acquire a joint property in the growing crop, and may unite in an action of trespass *de bonis* for cutting and carrying it away (*Foote* v. *Litchfield*, 3 Johns., 216, 221; *Moulton* v. *Robinson*, 7 Foster, 550); while in such a case the owner of the land alone, can bring trespass for breaking the close. (*Cro. Eliz.*, 143; 8 *Johns.*, 151.)

So, where the owner of land agreed by parol that one Hatch might use it so long as would be sufficient to compensate him for clearing it, and Hatch planted a crop of wheat, which was levied upon in December as wheat in the ground, upon an execution against Hatch, the occupant, it was held

that the wheat was a chattel, and the levy good and sufficient to authorize the sheriff to harvest the wheat in the following August. ( *Whipple* v. *Foot*, 2 Johns. R., 418.)

In *Green* v. *Armstrong* (1 Denio, 554, 556) numerous cases are cited showing that growing crops, which are the produce of manual labor and cultivation, may be conveyed by verbal contract as goods and chattels and sold on execution, and that trover may be maintained for them against one in possession of the land. (*Dunne* v. *Ferguson*, 1 Hayes, 542; see, also, *Austin* v. *Sawyer*, 9 Cow., 39, 42.) And they may be mortgaged by one out of possession of the premises. (*Fry* v. *Miller*, 45 Penn. St. R., 441; *Stewart* v. *Doughty*, 9 Johns., 108.)

Not crops only, but other things attached to the realty by one not owning the land, but with the consent of such owner, are frequently treated as chattels. (*Lancaster* v. *Eve*, 5 C. B., N. S., 727; *Dame* v. *Dame*, 38 N. H., 429, and authorities cited; *Smith* v. *Benson*, 1 Hill, 176; *Russell* v. *Richards*, 10 Maine, 429; 35 N. H., 480; 27 Penn. St., 291.) And buildings erected with the consent of the owner of the land by one in possession under a parol contract of sale, have been held to be the personal property of the party erecting them. (*Yates* v. *Mullin*, 23 Ind., 562.) Where a chattel has been annexed to another's freehold, but may, without injury to the freehold, be severed, it is not necessarily to be inferred from the annexation that such chattel becomes the property of the freeholder. Whether it does so or not may be a question on the evidence, and the jury may infer, from circumstances, an agreement that the owner of the chattel should have liberty to take it away. ( *Wood* v. *Hewett*, 8 Adol. & Ell., N. S., 913.)

From the verbal agreement set forth in the opening, that the plaintiff might work the land, in connection with the fact that the crop was sown with the consent and assistance of the defendants, who were the agents of the owner of the land, and that they were paid for their services by the plaintiff, the jury might infer an agreement that the crop thus sown should belong to the plaintiff. If such was the agree-

ment, it did not become part of the realty, but remained the personal property of the plaintiff. If an owner of land can, by a parol agreement to work on shares, vest in another the title to half or a greater share of a crop raised on his land, or can sell the crop growing, why can he not agree that the party raising the crop shall have the whole of it? If, by making such an agreement, he induces the other to expend his labor and his money, there is no want of consideration for the contract, and I can see no legal objection to giving effect to it.

The invalidity of the parol agreement to sell and convey the land, did not affect the plaintiff's title to the crop. If the agreement had remained executory in all its parts, of course none of its stipulations could have been separately enforced, though if standing alone they might have been valid. But although, by reason of the entirety of the contract, the plaintiff could not have enforced the stipulation allowing him to possess and work the farm, so long as it remained executory, yet, after it had been so far executed that the crop had been sown and was growing, the invalidity of the other provisions of the contract, under the statute of frauds, could not be invoked by the party who refused to complete, as against the party not in default, for the purpose of invalidating that part of the contract which had been executed, and divesting the plaintiff's title to the crop raised in pursuance of it. The plaintiff was not in default, and was not the party asserting the invalidity of the contract. For aught that appears he was, when ejected, ready and willing to complete the performance of it. He therefore could not be compelled to relinquish any benefit he had acquired from its partial performance. (*Dowdle* v. *Camp*, 12 Johns., 451; *Abbott* v. *Draper*, 4 Den., 51, 53; *Collier* v. *Coates*, 17 Barb., 471, and cases cited; *Erben* v. *Lorillard*, 19 N. Y., 302, 304; 7 Cow., 92; 1 Pick., 328; 20 id., 142; *King* v. *Brown*, 2 Hill, 487; *Lockwood* v. *Barnes*, 3 id., 128; *Bennett* v. *Scutt*, 18 Barb., 347.) In *Ex'rs of Pierrepont* v. *Barnard* (2 Seld., 279) the purchaser was allowed to carry off and retain timber

actually cut in pursuance of the parol license of the vendor, though as to the timber not cut the agreement was void, under the statute of frauds, and therefore but a revocable license. The crop was the product of the plaintiff's labor and money, expended while he was in possession of the land under the agreement. That possession was originally lawful, and the plaintiff had done no act and committed no default rendering it tortious. The jury could have found that the crop was raised by the plaintiff for his own benefit, with the consent of the vendor of the land. It had not, under those circumstances, become part of the realty as between the plaintiff and the party under whom he held, but was, from the time it was sown, a chattel belonging to the plaintiff, the title to which had never been transferred to the owner of the soil or to the defendants. It could have been lawfully levied upon on execution against the plaintiff. (2 Johns., 418, 421 ; 9 id., 112.) And if the facts are as stated in the opening, the plaintiff had the same right to it which he would have to any chattel which he might, during his temporary possession, have placed upon the land by consent of the owner, and which remained there when he was ejected. (1 Hill, 176.)

The re-entry by the defendants upon the land did not deprive the plaintiff of his title to the crop as personalty. The defendants are alleged to have been the agents of the owner and vendor of the land, with whom the plaintiff had contracted. There is nothing to show that their entry was adverse to such owner, or that it was not in his right and behalf. If the entry had been by a stranger, and adverse not only to the plaintiff but to the party through whose contract his right to the crop as personalty was derived, such an entry might have had the effect claimed. A crop may be personalty as to one party and not as to another. As between landlord and tenant, it is personalty during the term, or even after its expiration, if the term is determinable at will, or if the lessor has agreed that the tenant shall have the crop. (Hobart, 175.) But as between the tenant and one claiming under the foreclosure of a mortgage of the landlord made prior to the lease,

it goes with the realty.  (1 B. Ch., 613; 2 Den., 174.)  And such is the case wherever the question arises between one who has cultivated the crop and one who enters by title paramount to the party by whose consent the property was cultivated. There is no privity between them.  (*Lane* v. *King*, 8 Wend., 584.)  And the same result follows from the disseizin by a third party of the party by whose consent the land was cultivated. Where land is cultivated on shares, the owner of the land and the party who works it are tenants in common of the crop as a chattel.  But if the owner of the land is disseized while the crop is growing, the right to the crop as a chattel ceases.  If cut by the disseizor, replevin for it cannot be maintained as against him by either of the owners of the crop.  (*Demott* v. *Hagerman*, 8 Cow., 220.)  But similar consequences would not follow from the mere exclusion of the sower of the crop by the owner of the land with whom he had contracted.  Such an exclusion would not destroy the privity between the parties, and the character of the property would not, thereby, be changed.  If it could, every owner whose land is worked on shares, could, by his own wrongful act, divest the party, with whom he has contracted, of his title to the products of his labor.

It is urged by the respondent that, by part performance of the contract of sale, the plaintiff had become entitled to specific performance in equity; that, therefore, he had an equitable title to the land when he sowed the crop, and it consequently became part of the realty.

We do not think that it lies with the defendants to assert this equity.  It is clear that the plaintiff had not the legal title to the land; and the allegation was that the vendor, in whose behalf the defendants acted, refused to perform the contract to sell.  Neither he nor the defendants appear to have recognized any equitable title to the land in the plaintiff and they should not, after having ejected him, be allowed to set it up for the purpose of depriving him of his property which they have appropriated.  Furthermore, the equitable seizin of a vendee before conveyance is, in general, recog-

nized where a conveyance is finally decreed or made, and dates by relation from the time he was entitled to a conveyance. Here the contract was never enforced or performed.

I have, thus far, examined the case without reference to the position of the plaintiff's counsel, that the plaintiff, having entered upon the land with the license and permission of the owner to occupy and work it, became a tenant at will; and, as such, entitled to the emblements (Co. Litt., 55 *b*), notwithstanding that he entered under a contract of purchase.

The simplest form of a tenancy at will was where one man let to another to hold at the will of the lessor. (Co. Litt., § 68.) But a tenancy at will may be created otherwise than by express contract; it may arise by implication. (Craft on Real Prop. § 1544.) And an obligation to pay rent is not a necessary incident of such a tenancy. Where one enters by permission of the owner for an indefinite period, and without the reservation of any rent, he is, by implication of law, a tenant at will. (*Doe* v. *Baker*, 4 Dev. [N. C.], 220.) If he be placed upon the land without any terms prescribed or rent reserved, and as a mere occupier, he is strictly a tenant at will. (*Jackson* v. *Bradt*, 2 Caine's R., 174; 4 K. C., 114–125, 11th ed.; *Post* v. *Post*, 14 Barb., 253; *Burns* v. *Bryant*, 31 N. Y., 453.) Where a householder permitted another to occupy, rent free, the occupant was held to be a tenant at will (*Rex* v. *Collett*, Russ & Ry., 498; *Jackson* v. *Bryan*, 1 Johns., 322), and would be entitled to emblements. (*Doe* v. *Price*, 9 Bing., 357, 358.) A parol gift of land creates a tenancy at will. (*Jackson* v. *Rogers*, 1 Johns. Cas., 33; S. C., 2 Caine's Cases, 314.) And there is much authority in favor of the position, that one who is let into possession under a contract to purchase is strictly a tenant at will. (Washburn on Real Property, 511, 513, 515, 3d ed.; *Howard* v. *Shaw*, 8 M. & W., 118–122; *Waring* v. *King*, id., 571; *Doe* v. *Miller*, 5 Car. & P., 595; *Doe* v. *Chamberlaine*, 5 M. & W., 14; *Right* v. *Beard*, 13 East, 210; *Gould* v. *Thompson*, 4 Met., 224; 12 Mass., 325.) And he has

the right of ingress and egress to remove his effects. (*Love v. Edmonston,* 1 Iredell [N. C.], 152; *Jones* v. *Jones,* 2 Rich. L. R. [S. C.], 542; *Doe* v. *Baker,* 4 Dev., 220; *Manchester* v. *Doddridge,* 3 Iredell, 360; *Lowry* v. *Tew,* 3 Barb. Ch., 414; 5 Wend., 29.) He is not liable for rent, because a promise to pay rent cannot be implied in such a case, the tenant having entered under a different contract. (*Smith* v. *Stewart,* 6 Johns., 46; *Bancroft* v. *Wardwell,* 13 id., 489; *Winterbottom* v. *Ingham,* 7 Q. B., 611.) But, nevertheless, he is a tenant at will. (*Howard* v. *Shaw,* 8 M. & W., 122.) And he is not entitled to notice to quit if he makes default in his contract. (*Jackson* v. *Miller,* 7 Cow., 747.) A tenant strictly at will was not, prior to the Revised Statutes, entitled to notice to quit. (*Jackson* v. *Bradt,* 2 Caine's R., 169; *Doe* v. *Baker,* 4 Dev., 220; *Jackson* v. *Bryan,* 1 Johns., 322; 13 Maine, 214; 2 Esp., 717; Crabb on Real Property, § 1559; *Post* v. *Post,* 14 Barb., 253.) From considerations of equity, tenancies at will were, under certain circumstances, treated by the courts as tenancies from year to year merely for the sake of notice to quit. (4 Cow., 350.) This is called by Chancellor KENT a species of judicial legislation. (4 K. C., 127, 11th ed.; *Jackson* v. *Bryan,* 1 Johns., 322.) But this indulgence was not extended to a tenancy at will created by entry under a parol contract of purchase. (7 Cowen, 751, 752; *Suffern* v. *Townsend,* 9 Johns., 35; 9 id., 331.) In England, a tenant at will by entry under a contract of purchase is not entitled to notice to quit at a future time; but, unless he does some wrongful act to terminate the tenancy, he cannot be treated as a trespasser or sued in ejectment without a demand of possession. (5 Carr. & P., 595; 13 East, 210; 5 M. & W., 14.) If he makes default in his contract of purchase or commits waste, or in any other manner terminates the tenancy by his own wrongful act, he becomes a trespasser, and may be sued as such or in ejectment, and he cannot dispute the title of the party under whom he entered (*Cooper* v. *Stower,* 9 Johns., 331; *Doolittle* v. *Eddy,* 7 Barb., 74; 1 Wend., 418; 5 id.,

30; 6 Johns., 34, 49); and he would, no doubt, forfeit his right to emblements under those circumstances. (Co. Litt., 55 b.)

Expressions are to be found in some of the authorities cited, to the effect that one entering under a contract of purchase does not stand in the relation of tenant to the vendor. (6 Johns., 46; 13 id., 489.) These expressions are used, however, in reference to the question whether an undertaking to pay rent can be implied. But where a purchaser of a farm enters upon it under an express agreement of the vendor that he may occupy and work it until the vendor is prepared to convey, and the agreement to sell is merely by parol, and the question arises with reference to the rights of such an occupant, in case of a refusal of the vendor to perform, and a termination by him of the occupancy, without any default on the part of the occupant, there is strong reason for according to such occupant the rights of a tenant at will. The permission to occupy, unaccompanied by any contract of sale, would clearly create a tenancy at will. (31 N. Y., 453; 2 Caines' R., 174, and cases *supra*.) The effect of the invalidity of the contract of sale is to reduce the right of the vendee to that of a mere licensee, and to enable the vendor to revoke the license at his pleasure. When he exercises that right there is no injustice in placing him in the same position as if the contract of sale which he repudiates had not been made. The holding, from the beginning, was, in fact, at his will; and the principles upon which emblements are allowed to a tenant at will would seem applicable to such a case. (Comyns' Dig., Title Biens. G., 2; Co. Litt., 55 a, 55 b.)

The plaintiff further offered to prove an admission by the defendants that the crop belonged to him. In *Austin* v. *Sawyer* (9 Cow., 39, 43) a similar admission was held sufficient to authorize the jury to presume a formal and valid sale of the crop to the plaintiff without any other evidence. The admission in that case was made by the defendant's grantor at the time of conveying the land to the defendant.

Here it was alleged to have been made by the defendants personally.

We think the nonsuit was erroneous, and that the judgment should be reversed and a new trial granted, with costs to abide the event.

CHURCH, Ch. J., and PECKHAM, J., concur.

ALLEN concurs in result on first ground discussed; dissenting from proposition that plaintiff was tenant at will.

GROVER, J., dissents.     FOLGER absent.

Judgment reversed.